# **Exhibit 2**

State Complaint



West Virginia E-Filing Notice

CC-06-2026-C-168

Judge: Gregory L. Howard

**To:** Gavin McInnes
4 Addee Circle
Larchmont, NY 10538

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA
Jason Kessler v. Gavin McInnes
CC-06-2026-C-168

The following complaintwas FILED on 4/27/2026 9:50:54 AM

Notice Date:     4/27/2026 9:50:54 AM

Michael J. Woelfel
CLERK OF THE CIRCUIT COURT
Cabell County
750 5th Avenue, Suite 114
HUNTINGTON, WV 25701

(304) 526-8622

# SUMMONS

## IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA
### Jason Kessler v. Gavin McInnes

Service Type:     Filer - Private Process Server

NOTICE TO:   Gavin McInnes, 4 Addee Circle, Larchmont, NY 10538

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Jason Kessler, 1365 5th Ave., Apt.13, Huntington, WV 25701

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

4/27/2026 9:50:54 AM

Date

/s/ Michael J. Woelfel

Clerk

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on

☐  I certify that I personally delivered a copy of the Summons and Complaint t

☐  I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling or usual place of abode to

, someone who is eighteen (18) years of age or above and resides there.

☐  I certify that I personally delivered a copy of the Summons and Complaint to                              , an agent or attorney-in-fact authorized by appointment or statute to receive service of process for the individual.

☐  I have reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐  I have not reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐  Not Found in Bailiwick

Date

Server's Signature

FILED | 4/27/2026 9:50 AM
CC-06-2026-C-168
Cabell County Circuit Clerk
Michael J. Woelfel

**IN THE CIRCUIT COURT OF** _____ **CABELL** _____

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

**Plaintiff(s)**                                     **Case No.** _____

Jason Kessler                                        **Judge:** _____

1365 5th Ave Apt 13                                  **Plantiff's Phone:** (571) 460-0412

Huntington, WV 25701

**vs.**                          **Days to**
                                 **Answer**      **Type of Service**
**Defendant(s)**

Gavin McInnes
Name                             _____  _____

4 Addee Circle                   **Defendant's Phone:** (917) 939-7381
Street Address

Larchmont, NY 10538
City, State, Zip Code

---

**II. TYPE OF CASE:**

- [x] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

---

**III. JURY DEMAND:** [x] Yes [ ] No   CASE WILL BE READY FOR TRIAL BY (Month/Year): 8 / 2026

---

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [x] No

**IF YES, PLEASE SPECIFY:**

- [ ] Wheelchair accessible hearing room and other facilities
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

---

Attorney Name: _____
Firm: _____
Address: _____
Telephone: _____

Representing:
- [ ] Plaintiff          [ ] Defendant
- [ ] Cross-Defendant    [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff [ ] 3rd-Party Defendant

[x] **Proceeding Without an Attorney**

---

Original and _____ copies of complaint enclosed/attached.

Dated: 04 / 27 / 2026      Signature: _____

SCA-C-100:  Civil Case Information Statement (Other than Domestic Relations)       Page 1 of 2
Revised: 04/2020

**Plaintiff:** _____ *, et al* **Case Number:** _____

**vs.**

**Defendant:** _____ *, et al*

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

Dave Reilly
_____
Defendant's Name

3710 N Carolwood Ct
_____
Street Address

Post Falls, ID 83854
_____
City, State, Zip Code

Defendant's Phone: (646) 942-3766

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

_____
Defendant's Name

_____
Street Address

_____
City, State, Zip Code

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

FILED | 4/27/2026 9:50 AM
CC-06-2026-C-168
Cabell County Circuit Clerk
Michael J. Woelfel

**IN THE CIRCUIT COURT OF CABELL COUNTY**
**STATE OF WEST VIRGINIA**

---

**JASON KESSLER,**
      Plaintiff,

*v.*                    Civil Action No.: _____

**GAVIN McINNES and**
    **DAVID J. REILLY,**
      Defendants.

---

# COMPLAINT FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY
## (JURY TRIAL DEMANDED)

COMES NOW Plaintiff Jason Kessler, pro se, and for his Complaint against Defendant Gavin McInnes states and alleges as follows:

## I. PARTIES

1. Plaintiff Jason Kessler is an individual residing in Cabell County, West Virginia, and brings this action in his own name and on his own behalf.

2. Defendant Gavin McInnes is an individual residing in Larchmont, New York. Defendant is a media personality, podcaster, and co-founder of the organization known as the Proud Boys. Defendant hosts and produces The Gavin McInnes Show, an online video and audio program that is broadcast via the internet and is accessible to, and consumed by, subscribers and viewers located in West Virginia. Defendant also appeared as a guest on the Backlash Podcast and on a program broadcast on the Compound Media YouTube channel, both similarly broadcast via the internet and accessible to subscribers and viewers in West Virginia. Defendant is affiliated with Compound Uncensored, a media venture formed by the 2024 merger of Defendant's subscription platform Censored.TV with Compound Media; the Compound Media YouTube channel has 201,000 subscribers. These programs and platforms solicit and receive subscription revenue and advertising revenue from West Virginia residents, thereby transacting business in this State. Defendant additionally maintains a public account on the social media platform X (formerly Twitter) under the handle @Gavin_McInnes, through which he publishes content accessible to and viewed by residents of West Virginia.

3. Defendant David J. Reilly is an individual residing in Post Falls, Kootenai County, Idaho. Reilly is the host, co-host, and producer of the Backlash Podcast, a self-described American Nationalist political commentary program broadcast via the internet to subscribers and viewers throughout the United States, including West Virginia. Reilly operates the Backlash Podcast through thebacklash.net and associated platforms including Rumble, Spotify, Apple Podcasts, and X (formerly Twitter) under the handle @realBacklash. The Backlash Podcast solicits and receives subscription revenue and donations from listeners, including residents of West Virginia, thereby transacting business in this State. Reilly is, on information and belief, also affiliated with the Idaho Tribune, an online publication he controls, which is similarly accessible to residents of West Virginia.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to W. Va. Code § 51-2-2, as this is a civil action for defamation arising under West Virginia common law. The amount in controversy exceeds the jurisdictional threshold of this Court.

5. Venue is proper in Cabell County, West Virginia, pursuant to W. Va. Code § 56-1-1, because Plaintiff resides in Cabell County and suffered harm to his reputation, livelihood, and personal safety in this county. The defamatory statements were published via the internet and received in Cabell County, where their injurious effects were felt.

6. This Court has personal jurisdiction over Defendant McInnes pursuant to the West Virginia Long-Arm Statute, W. Va. Code § 56-3-33, for the following independent and cumulative reasons: (a) Defendant intentionally directed defamatory statements at Plaintiff, knowing or having reason to know that Plaintiff resides in West Virginia, and those statements caused tortious injury in this State; (b) Defendant, through The Gavin McInnes Show, regularly solicits and receives subscription fees and advertising revenue from West Virginia residents, constituting the transaction of business in this State; (c) Defendant appeared on the Backlash Podcast, which is broadcast to and consumed by viewers in West Virginia and similarly derives revenue from this State; (d) Defendant publishes content via his X account @Gavin_McInnes to audiences including West Virginia residents; and (e) Defendant has caused injury to Plaintiff in West Virginia by an act committed outside this State, while regularly doing and soliciting business in this State, within the meaning of W. Va. Code § 56-3-33(a)(6).

7. This Court has personal jurisdiction over Defendant Reilly pursuant to the West Virginia Long-Arm Statute, W. Va. Code § 56-3-33, for the following independent and cumulative reasons: (a) Defendant Reilly intentionally hosted and broadcast defamatory statements about Plaintiff on the Backlash Podcast, directing those statements at audiences throughout the United States, including West Virginia, knowing or having reason to know that Plaintiff resides in West Virginia, and causing tortious injury in this State; (b) the Backlash Podcast solicits and receives

subscription revenue and donations from West Virginia residents through thebacklash.net and associated platforms, constituting the regular transaction of business in this State; (c) Defendant Reilly has caused injury to Plaintiff in West Virginia by an act committed outside this State while regularly doing and soliciting business in this State, within the meaning of W. Va. Code § 56-3-33(a)(6); and (d) Defendant Reilly, as host and producer of the Backlash Podcast, is jointly and severally liable with Defendant McInnes for the publication of the defamatory statements broadcast on that program.

## III. FACTUAL ALLEGATIONS

A. Background

8. Plaintiff Jason Kessler is the author of the book Charlottesville and the Death of Free Speech, which documents his experience as the organizer and permit holder for the Unite the Right rally held in Charlottesville, Virginia in August 2017. Plaintiff sells this book through his personal website, through which customers must provide contact and payment information to complete purchases.

9. Since 2018, Plaintiff has not organized, hosted, or participated in any public event. Plaintiff maintains no active social media accounts under his own name, and has not sought public attention or thrust himself into any public controversy. Plaintiff is a private figure for purposes of this action. Even if this Court were to find that Plaintiff was at some earlier time a limited-purpose public figure in connection with the Unite the Right rally, that status has lapsed. The Supreme Court recognized in Wolston v. Reader's Digest Ass'n, 443 U.S. 157 (1979), that a plaintiff's prior involvement in a public controversy does not confer permanent public figure status, and Justice Blackmun's concurrence specifically identified the lapse of significant time as erasing prior public figure status. Nearly nine years have elapsed since the Unite the Right rally, during which Plaintiff has been entirely absent from public life. Plaintiff has no "ready access to the media" — the rationale underlying heightened public figure standards — and has no meaningful ability to counter Defendant's accusations in any public forum. In the alternative, and without waiving the foregoing, Plaintiff avers that even if this Court applies the actual malice standard applicable to public figures, the allegations of this Complaint satisfy that standard, as set forth herein.

10. Plaintiff was briefly and publicly a member of the Proud Boys. His initiation into that organization was livestreamed and covered by numerous media outlets at the time, and is a matter of documented public record.

B. The SPLC Indictment and Surrounding Speculation

11. On April 21, 2026, the United States Department of Justice announced that a federal grand jury in the United States District Court for the Middle District of Alabama had returned an indictment against the Southern Poverty Law Center ("SPLC"), captioned *United States v. Southern Poverty Law Center*, No. [to be confirmed upon PACER review] (M.D. Ala. filed Apr. 21, 2026), assigned to U.S. District Judge Emily Marks.

The indictment charges the SPLC with eleven (11) counts: six counts of wire fraud in violation of 18 U.S.C. § 1343, four counts of making false statements to a federally insured bank in violation of 18 U.S.C. § 1014, and one count of conspiracy to commit concealment money laundering. The indictment alleges that the SPLC operated a covert network of paid informants—referred to internally as "field sources" or "the Fs"—and that between 2014 and 2023 the SPLC secretly funneled more than $3 million to these individuals through fictitious shell entities, including accounts opened in the names of "Center Investigative Agency (CIA)," "Fox Photography," and "Rare Books Warehouse," to conceal the true nature and source of the payments. Among the field sources described in the indictment is an unnamed individual who was a member of the "online leadership chat group" that planned the Unite the Right rally in Charlottesville, Virginia in August 2017, who attended the rally at the direction of the SPLC, who helped coordinate transportation for several other attendees, and who received payments of more than $270,000 between 2015 and 2023, transmitted through these fictitious entities.

12. The indictment further alleges that the unnamed field source described above "made racist postings under the supervision of the SPLC." Publishing racist material may constitute criminal conduct under multiple statutes, including but not limited to West Virginia's ethnic intimidation statute, W. Va. Code § 61-6-21. Accordingly, the accusations being attributed to Plaintiff by Defendant do not merely harm his reputation—they impute the commission of criminal offenses under the laws of West Virginia and other jurisdictions.

13. The indictment does not name Plaintiff. However, because Plaintiff was the permit holder for the Unite the Right rally and participated in certain planning communications, the indictment has been the subject of widespread public speculation and accusations implicating Plaintiff as the unnamed individual.

14. Millions of people now falsely believe that the unnamed individual in the DOJ indictment was a paid SPLC operative who secretly coordinated the Unite the Right rally on the SPLC's behalf, received hundreds of thousands of dollars in illegal wire transfers to do so, and made racist postings at the SPLC's direction as part of an orchestrated scheme—in other words, that the individual was a crisis actor and informant who staged the event to entrap others and generate harmful optics, rather than a good-faith organizer. This false belief—that the unnamed individual was a covert SPLC agent, not a genuine participant—has subjected that individual to widespread condemnation, threats to physical safety, and complete professional destruction. No member of the public would knowingly conduct business with, or provide personal or financial information to, a person publicly accused of being a paid SPLC informant who entraps people on behalf of the organization.

15. Plaintiff did not receive illegal wire transfers from the SPLC. Plaintiff did not act as a paid operative, informant, or agent of the SPLC. Plaintiff did not orchestrate or stage the Unite the Right rally as a covert operation conducted on behalf of the SPLC or any other organization. Plaintiff did not make racist postings under the supervision of

the SPLC. Plaintiff did not coordinate or arrange transportation for rally attendees at the direction of the SPLC. Plaintiff did not entrap attendees or participants in the rally at the direction of the SPLC or any other entity. Plaintiff notes that a jury in *Sines v. Kessler*, No. 3:17-cv-00072 (W.D. Va. 2021), found him civilly liable for Virginia state law civil conspiracy in connection with the Unite the Right rally. However, the accusations made by Defendant McInnes are categorically distinct from those findings: Defendant accuses Plaintiff of being a secret, paid SPLC field source who staged the entire event as a false flag operation at the SPLC's direction and received illegal compensation to do so. Those specific accusations—that Plaintiff was an SPLC operative, informant, or field source; that he received illegal wire transfers from the SPLC transmitted through fictitious shell entities; that he made racist postings at the SPLC's direction; that he coordinated transportation for rally attendees on the SPLC's behalf; and that he orchestrated the rally as a covert SPLC scheme—are entirely false and were established by no court.

## C. Defendant Reilly's Background, Participation in Unite the Right Planning, and Unique Personal Knowledge

16. Defendant David J. Reilly is the host and producer of the Backlash Podcast, which he describes as a premier American Nationalist talk show. Prior to founding the Backlash Podcast, Reilly worked as a talk radio host at WHLM, a family-owned radio station in Bloomsburg, Pennsylvania. In that capacity, Reilly reported on and attended the 2017 Unite the Right rally in Charlottesville, Virginia, and conducted an on-air interview with Plaintiff Jason Kessler. Reilly has publicly acknowledged his presence at and involvement with Unite the Right-related events. In 2024, while Plaintiff was researching and writing his book Charlottesville and the Death of Free Speech, Plaintiff contacted Defendant Reilly via X (formerly Twitter) direct message to request comment for inclusion in the book. Defendant Reilly responded with hostility and anger, expressing displeasure at being included in the book and directing insults at Plaintiff. Plaintiff has preserved records of this direct message exchange. This prior hostile encounter between Reilly and Plaintiff is relevant to Reilly's state of mind when, in April 2026, he chose to host Defendant McInnes on the Backlash Podcast in the immediate aftermath of the SPLC indictment — a context in which McInnes was already publicly accusing Plaintiff by name — and to broadcast those accusations to his audience without objection, correction, or dissociation.

17. Critically, Defendant Reilly was a participant in private online planning communications for the Unite the Right rally. Specifically, Reilly operated under the Discord username "DavyCrockett" (Discord ID: 274397563476639744) and was a member of the invitation-only Charlottesville 2.0 Discord servers in which the Unite the Right rally was planned, organized, and coordinated. This was established through the Unicorn Riot Discord leaks, which linked the DavyCrockett account to Reilly's own website davereillymedia.com, and was confirmed under oath at trial: in the civil action *Sines v. Kessler*, No. 3:17-cv-00072 (W.D. Va.), Plaintiff Jason Kessler identified Discord user "Davey Crockett" as Dave Reilly under oath during Day 16 of trial proceedings on November 15, 2021 (transcript p. 170). Reilly sent at least 90 messages in the Charlottesville 2.0 planning servers.

18. Defendant Reilly's participation in the Unite the Right planning Discord servers is relevant not because it revealed the identity of the SPLC's unnamed field source — that information was concealed from all participants by design — but for three narrower and legally sound reasons. First, Reilly had direct, firsthand familiarity with Plaintiff's public and acknowledged role as the rally's organizer and permit holder. He knew Plaintiff in that legitimate, openly documented capacity, which makes it more reckless, not less, to platform an accusation that Plaintiff was secretly something else entirely — a covert SPLC operative. Second, Reilly was present in the Backlash Podcast broadcast and heard Defendant McInnes admit in real time that his accusation was based on no evidence whatsoever, only "vibes." A publisher who hears an admitted-groundless accusation and broadcasts it to his audience without objection, correction, or caveat acts with reckless disregard for its truth or falsity. Third, Reilly deliberately chose to direct McInnes's accusation at an American Nationalist audience he knew to be hostile toward persons accused of being government informants — the audience most likely to cause Plaintiff harm as a result. Fourth, and independently, Defendant Reilly harbored a pre-existing personal hostility toward Plaintiff arising from a 2024 direct message exchange on X in which Plaintiff contacted Reilly to request comment for his book, and Reilly responded with anger and insults. On information and belief, this prior personal grievance against Plaintiff informed Reilly's decision to host Defendant McInnes's appearance on the Backlash Podcast and to broadcast McInnes's accusations against Plaintiff without objection or correction. A publisher who uses another party's baseless accusation as a vehicle to damage a person toward whom he already harbors personal hostility acts with actual malice. These four grounds independently and cumulatively constitute actual malice attributable to Reilly as publisher of the Backlash Podcast episode.

## D. Defendants' Defamatory Statements — X (Twitter) Posts of April 21, 2026

19. On April 21, 2026 at approximately 6:34 PM Eastern Time, the evening before his appearance on the Backlash Podcast, Defendant McInnes published a post on his X account (@Gavin_McInnes) in which he quote-tweeted a post published by @15poundstogo about the DOJ's SPLC indictment. This post received 484,000 views (151 comments, 1,200 retweets, 7,400 likes, 570 bookmarks). A screenshot of this post is attached hereto as Exhibit C. The post being quote-tweeted stated, in substance:

*"This indictment against the Southern Poverty Law Center for funding white supremacists is amazing. They even funded one guy who helped arrange the infamous Charlottesville Unite the Right rally! Remember the 'Very Fine People' Hoax!? Link to full document below."* [1]

20. In his own commentary appended to the above quote-tweet, Defendant McInnes stated:

---

[1] Defendant McInnes, @Gavin_McInnes, X post, Apr. 21, 2026, 6:34 PM ET: https://x.com/Gavin_McInnes/status/2046719367296041168

*"Holy CRAP! I remember Jason Kessler demanding me and Proud Boys come to Charlottesville and I kept refusing again and again. He wouldn't drop it. I remember screaming at him on the phone to fuck off and let it go."*

21. Defendant's quote-tweet and commentary, read together in context, constitute a false and defamatory communication to Defendant's X followers for the following reasons:

(a)  By quote-tweeting a post explicitly stating that the SPLC "funded one guy who helped arrange the infamous Charlottesville Unite the Right rally," and immediately appending his own commentary identifying "Jason Kessler" by name as the person who "demanded" that Defendant and the Proud Boys attend that rally, Defendant unambiguously communicated to his audience that Plaintiff is the unnamed individual referenced in the DOJ indictment who received illicit SPLC funds and arranged the rally.

(b)  Defendant's statement that Plaintiff "kept" demanding his attendance, "wouldn't drop it," and required Defendant to "scream at him on the phone" to get him to stop is false. Plaintiff did not repeatedly call or demand Defendant's attendance. In truth, Defendant was included in a Facebook group chat where the rally was discussed; he indicated he would not attend, and the matter was accepted without confrontation. Phone records and Facebook records will establish that no such pattern of calls or confrontational phone conversation occurred.

(c)  The false narrative communicated by this post—that Plaintiff was an SPLC-funded organizer who aggressively pressured others into attending the rally—directly maps onto the most serious and harmful allegations contained in the DOJ indictment, namely that the unnamed informant coordinated illegal activity on behalf of the SPLC, made racist postings at its direction, and received hundreds of thousands of dollars for doing so.

22. On April 21, 2026 at approximately 8:07 PM Eastern Time, Defendant McInnes published a second defamatory post on his X account (@Gavin_McInnes), which received 102,400 views (53 comments, 256 retweets, 1,800 likes, 246 bookmarks) and is attached hereto as Exhibit D. This post shared a video clip from approximately August 2017, purportedly showing Defendant interviewing Plaintiff on The Gavin McInnes Show in the immediate aftermath of the Unite the Right rally. Defendant introduced the clip with the following caption:

*"Me yelling at Charlottesville organizer Jason Kessler after 'Unite the Right' and accusing him of trying to recruit Proud Boys. (This is in 2017 when 'alt-Right' had come to mean full on NatSoc.)"* [2]

---

[2] Defendant McInnes, @Gavin_McInnes, X post, Apr. 21, 2026, 8:07 PM ET: https://x.com/Gavin_McInnes/status/2046742693586305102

23. In the video clip shared in the second post, Defendant can be heard accusing Plaintiff: "I'm suspicious of you coming to Proud Boys' meetings, saying you're not alt-right, telling me you're not alt-right and I think you were there to try to recruit guys."

24. The second post and clip are defamatory in the context of the present controversy for the following reasons:

(a)  Published hours after the first post—in which Defendant had already identified Plaintiff by name as the apparent SPLC informant—the second post invited viewers to interpret Defendant's 2017 suspicions about Plaintiff's "recruitment" activity as confirmation of the current accusation that Plaintiff was acting as a paid SPLC operative infiltrating and recruiting members of right-wing organizations on the SPLC's behalf.

(b)  The caption's reference to the "alt-Right" having come to mean "full on NatSoc" (National Socialism) was calculated to associate Plaintiff with the most extreme ideological framing possible, further imputing to him the kind of racist conduct alleged against the unnamed SPLC informant in the DOJ indictment.

(c)  A reasonable reader viewing both posts in sequence—as they appeared on Defendant's timeline—would understand Defendant to be communicating that: Plaintiff was an SPLC-paid informant; Plaintiff had previously infiltrated and attempted to recruit members of the Proud Boys on the SPLC's behalf; Defendant himself had recognized this at the time; and Plaintiff's arrangement of the Unite the Right rally was a paid operation for the SPLC that resulted in violence and deaths.

25. Defendant's two X posts of April 21, 2026, described in paragraphs 14 through 19 above, were published to Defendant's followers on X, which is a publicly accessible platform, and received more than 600,000 combined views. The posts remain publicly accessible on the internet as of the filing of this Complaint.

26. The timing and sequencing of the two posts—published the evening immediately before Defendant's April 22, 2026 appearance on the Backlash Podcast—demonstrates that Defendant had a considered plan to disseminate his accusations against Plaintiff through multiple media channels in rapid succession, maximizing the audience reached and the reputational harm caused.

E. Defendants' Defamatory Statements — Backlash Podcast (April 22, 2026)

27. On April 22, 2026, the day after his X posts described above, Defendant McInnes appeared as a guest on Episode 137 of the Backlash Podcast, titled "SPLC INDICTED BY DOJ: With Gavin McInnes, Richard Spencer, Ken Silva & Casey Whalen" (runtime: 2:49:55). Defendant Reilly hosted, produced, and broadcast the episode in his capacity as host and operator of the Backlash Podcast, which has 4,490

followers on Rumble. Both Defendants are liable as publishers of the defamatory statements made during this broadcast, which begin at approximately the 30:45 mark.

28. The Backlash Podcast is hosted, produced, and operated by Defendant Reilly, an individual with documented ties to extremist organizations including Identity Europa, a group commonly recognized as a hate group, and a documented participant in the Unite the Right planning Discord servers under the username "DavyCrockett." Defendant McInnes knowingly chose to broadcast his accusations about Plaintiff on Reilly's platform, which is consumed by an audience predisposed to view persons accused of being SPLC informants as dangerous bad actors, thereby deliberately maximizing the reputational and physical harm to Plaintiff. Defendant Reilly, who was directly familiar with Plaintiff's openly documented role as the rally's organizer and permit holder, hosted and broadcast McInnes's false accusation against Plaintiff without objection, correction, or caveat, despite having heard McInnes admit in real time that the accusation rested on no evidence. Defendant Reilly published the episode to his audience on Rumble and associated platforms. The Backlash Podcast is broadcast via the internet to viewers throughout the United States, including West Virginia, where the defamatory statements were received and where their harm was felt.

29. As of the filing of this Complaint, the Backlash Podcast episode in which Defendant appeared has been viewed at least 3,200 times on the Rumble platform.

30. During the April 22, 2026 broadcast, Defendant McInnes responding to a question from the host about the informant's identity, explicitly named Kessler."It sounds like Jason Kessler. I'm 95% sure that Jason was getting SPLC money. But again, that's just my theory. And I'm basing it strictly, almost exclusively, on vibes." This statement directly and unambiguously accused Plaintiff of being the unnamed individual referenced in the DOJ indictment—a paid informant and operative of the SPLC who received hundreds of thousands of dollars in illegal wire transfers, made racist postings on the SPLC's behalf, and criminally solicited Defendant and others to attend and participate in what Plaintiff allegedly knew to be an SPLC-orchestrated entrapment operation, in violation of W. Va. Code § 61-11-8a and analogous statutes. This accusation was a repetition and amplification of the false identification Defendant McInnes had made the previous evening in his X posts, now delivered to a distinct and additional audience.[3]

31. Defendant's own words during the broadcast confirm that this accusation was made without any evidentiary basis. Defendant stated explicitly that his accusation was based on "vibes" and not evidence, demonstrating that he had no factual foundation for his charge and made it with reckless disregard for its truth or falsity.

---

[3] Backlash Podcast, Episode 137, "SPLC INDICTED BY DOJ: With Gavin McInnes, Richard Spencer, Ken Silva & Casey Whalen" (Apr. 22, 2026), runtime 2:49:55, defamatory statements beginning at approximately 30:45, Rumble: https://rumble.com/v78v83i-episode-136-splc-indicted-by-doj-what-this-means-for-north-idaho-and-pnw-wk.html

32. Defendant McInnes further stated during the broadcast that Plaintiff called him "a hundred times" attempting to pressure and persuade him to attend the Unite the Right rally. This statement is false and directly contradicts the actual record. Plaintiff did not engage in any such pattern of telephone calls. As set forth above, Defendant was included in a Facebook group chat in which the rally was discussed; he indicated he would not attend, and the matter was dropped without confrontation. Phone records will confirm that the claim of a hundred calls is without factual basis.

33. Defendant further stated that he was required to "scream at" Plaintiff over the telephone to compel Plaintiff to stop asking him about the rally. This statement is false, and repeats the false claim made in Defendant's X post of the previous evening. No such screaming telephone confrontation occurred.

34. Defendant McInnes further stated or strongly implied that multiple chapters of the Proud Boys organization investigated Plaintiff and determined he was a malicious infiltrator and bad actor, such that Plaintiff never actually joined the Proud Boys. This statement is false. Plaintiff's initiation into the Proud Boys was publicly documented, livestreamed, and broadcast at the time of his membership. Documentary evidence will establish that Plaintiff was in fact a member of the organization.

35. Taken together, Defendant's statements on the Backlash Podcast—when read together with and as a continuation of his X posts of the preceding evening—constructed and disseminated across multiple platforms a false narrative to the effect that: (a) Plaintiff was a paid SPLC operative and informant who received hundreds of thousands of dollars in illegal wire transfers; (b) Plaintiff made racist postings at the direction of the SPLC, exposing him to criminal liability under W. Va. Code § 61-6-21 and related statutes; (c) Plaintiff orchestrated the Unite the Right rally as a staged, covert operation at the direction of the SPLC, acting as a crisis actor and entrapment agent rather than a genuine organizer; (d) Plaintiff criminally solicited Defendant and others to attend and participate in what Plaintiff allegedly knew to be an SPLC entrapment scheme, in violation of W. Va. Code § 61-11-8a; and (e) Plaintiff's history with the Proud Boys was itself part of this SPLC infiltration and criminal solicitation scheme, recognized as such by the organization's chapters.

## F. Defendant McInnes's Defamatory Statements — The Gavin McInnes Show

36. On information and belief, Defendant McInnes has also used his own program, The Gavin McInnes Show, to further accuse Plaintiff of disreputable and criminal conduct, including receiving illicit funds from the SPLC, acting as a covert SPLC operative, and criminally soliciting others to participate in what Plaintiff allegedly knew to be an SPLC-orchestrated entrapment scheme, in violation of W. Va. Code § 61-11-8a. The Gavin McInnes Show is broadcast to and consumed by subscribers in West Virginia. Plaintiff reserves the right to amend this Complaint to include additional specific statements from The Gavin McInnes Show upon completion of discovery.

## G. Defendant McInnes's Defamatory Statements — Compound Media / Anthony Cumia Show (April 23–24, 2026)

37. On April 23, 2026, Defendant McInnes appeared as a guest on a program hosted by Anthony Cumia and broadcast on the Compound Media YouTube channel. The episode is titled "They LIED! — Gavin McInnes and Anthony Cumia Go SCORCHED EARTH After STUNNING Indictment of SPLC" and has a runtime of 25:55. Compound Media is a media company that merged with Defendant's subscription platform Censored.TV in 2024 to create the joint venture known as Compound Uncensored, but continues to operate its own YouTube channel under the Compound Media name. That channel has 201,000 subscribers. The April 23, 2026 episode has been viewed at least 36,000 times and received at least 1,600 likes. The program is accessible to and viewed by residents of West Virginia. [4] (defamatory statements beginning at approximately the 15:45 mark).

38. During the April 23, 2026 broadcast, Defendant McInnes made the following statements concerning Plaintiff, among others. Host Anthony Cumia stated: "The credibility of a lot of people is going to go down the shitter whether they did it or not." Defendant responded: "I've always been wary, I've always been dubious of Jason Kessler, but I don't have proof. This is still just a vibe." Cumia then stated: "It's like anything else, if there's a suspicion that you're a rat no one's really going to trust you at that point. I mean the mob...you're just dead. If someone suspects you, you're done." Defendant responded: "Yeah, they like to overcompensate and kill a bunch of innocent guys to make sure they got the tumor out."

39. The foregoing statements are defamatory and constitute compelling additional evidence of actual malice for the following reasons:

(a) Defendant again identified Plaintiff by name — "Jason Kessler" — as the subject of his suspicion, repeating and republishing his prior false accusation that Plaintiff was the unnamed SPLC field source referenced in the DOJ indictment. This constitutes a third independent publication of the defamatory identification, two days after the Backlash Podcast episode, demonstrating that Defendant's publications were not a single impulsive remark but a sustained, deliberate campaign.

.

(b) Defendant again expressly acknowledged that he lacked proof for his accusation — "I don't have proof. This is still just a vibe" — while continuing to make it publicly and by name. This is Defendant's third public acknowledgment of the absence of any evidentiary basis for his accusation against Plaintiff, constituting compelling and repeated evidence of actual malice.

(c) Most significantly, the exchange between Defendant and Cumia on April 23, 2026 demonstrates that Defendant had actual, contemporaneous knowledge of the severe and potentially violent consequences of his accusations. Cumia stated explicitly that a person merely suspected of being an informant is effectively

---

[4] Compound Media, "They LIED! — Gavin McInnes and Anthony Cumia Go SCORCHED EARTH After STUNNING Indictment of SPLC" (Apr. 23, 2026), runtime 25:55, defamatory statements beginning at approximately 15:45, 201K subscribers, YouTube: https://www.youtube.com/watch?v=2zlQMTvU6j4

"dead" — that suspicion alone, regardless of guilt, destroys a person entirely. Defendant did not dispute this; he affirmed it, stating that "they like to overcompensate and kill a bunch of innocent guys to make sure they got the tumor out." Defendant's use of the phrase "innocent guys" in this context is an on-the-record acknowledgment that the targets of such accusations — including persons he has accused without proof— may be innocent. Defendant nonetheless continued to identify Plaintiff by name as the suspected informant. This exchange constitutes direct evidence that Defendant published and continued to publish his false accusations with conscious and deliberate disregard for the catastrophic harm they would cause to Plaintiff, even if Plaintiff were innocent — which is the definition of actual malice.

40. On April 24, 2026 at approximately 1:41 PM Eastern Time, Defendant McInnes reposted the Compound Media interview to his own X account (@Gavin_McInnes) with the caption: "The Ant Man is mad he wasn't offered any SPLC money. Me too! @AnthonyCumia" — a statement communicating that Plaintiff, like McInnes and Cumia, was wrongly excluded from SPLC payments, thereby reinforcing the false implication that SPLC payments to rally participants were a known and expected phenomenon. The repost is available at [5], thereby republishing the defamatory statements to Defendant's X following. This repost has been viewed 13,500 times (5 comments, 13 retweets, 103 likes, 5 bookmarks) and constitutes a fourth independent publication of Defendant's defamatory identification of Plaintiff, made one full day after the Compound Media broadcast and three days after his initial X posts — demonstrating an ongoing, deliberate, and unretracted course of defamatory conduct rather than a single, isolated statement. A screenshot of this post is attached hereto as Exhibit E.

## H. Defendants' Knowledge of Falsity and Failure to Retract

41. On information and belief, Defendant McInnes has communicated privately and electronically—including in written electronic communications—that he harbors serious doubts about the truth of his own public accusations against Plaintiff, and that he is not confident that Plaintiff is in fact the unnamed individual referenced in the DOJ indictment.

42. Notwithstanding those private doubts, Defendant has not publicly retracted his accusations, has not removed his posts from X or any other platform, and has not issued any correction or clarification on the Backlash Podcast or elsewhere. Defendant has allowed his false accusations to remain in public view and to continue accumulating views and spreading to new audiences.

43. The combination of Defendant's acknowledged lack of evidentiary basis for his public accusations (his own admission that they were based on "vibes"), his private doubts about their truth, and his deliberate refusal to retract or correct his statements

---

[5] Defendant McInnes, @Gavin_McInnes, X repost, Apr. 24, 2026, 1:41 PM ET: https://x.com/Gavin_McInnes/status/2047732710412562739

constitutes compelling evidence of actual malice—i.e., that Defendant made and perpetuated his statements with knowing falsity or, at minimum, reckless disregard for their truth or falsity.

I. Actual Malice

44. Defendant McInnes made each of the above-described statements knowing them to be false, or with reckless disregard as to their truth or falsity, constituting actual malice under the standards set forth in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and its progeny, and as applied in West Virginia law.

45. Defendant expressly acknowledged on the Backlash Podcast that his accusation regarding SPLC payments was based on "vibes" and not evidence. An accusation of criminal conduct made without evidence and acknowledged as groundless by its author constitutes, at minimum, reckless disregard for the truth.

46. Defendant's claims that Plaintiff called him "a hundred times" and that he had to scream at Plaintiff to stop are so far removed from documented fact—and so easily verifiable by reference to phone and electronic records—that they were made with knowing falsity or deliberate indifference to truth. These same false claims were repeated in Defendant's X posts and on the Backlash Podcast, demonstrating a pattern of deliberate fabrication rather than honest mistake.

47. On information and belief, Defendant's private electronic communications reflect that he doubted the truth of his public accusations even as he made them and declined to retract them thereafter. This subjective awareness of probable falsity is direct evidence of actual malice.

48. Defendant deliberately orchestrated a multi-platform campaign disseminating his accusations against Plaintiff, beginning with his X posts on the evening of April 21, 2026 and continuing with his Backlash Podcast appearance the following day. This calculated sequencing—designed to reach the maximum possible audience across different media—reflects not inadvertent error but purposeful dissemination of statements Defendant knew or believed to be false.

49. Defendant deliberately chose to broadcast his accusations on the Backlash Podcast, a platform hosted by a figure with ties to recognized hate groups and whose audience is predisposed to view persons accused of being SPLC informants as legitimate targets of hostility. This deliberate choice of forum, combined with the prior seeding of the accusation on X, reflects Defendant's intent to cause Plaintiff maximum reputational and personal harm, further evidencing actual malice.

## IV. COUNT I — DEFAMATION (DEFAMATION PER SE) (Against Both Defendants)

50. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 as if fully set forth herein.

51. Defendant McInnes made false and defamatory statements of fact concerning Plaintiff across multiple platforms and on multiple occasions, including but not limited to: (a) that Plaintiff was receiving illegal payments from the SPLC as a paid informant and operative; (b) that Plaintiff acted as a covert SPLC agent who orchestrated the Unite the Right rally as a staged, false-flag operation at the SPLC's direction rather than as a genuine organizer; (c) that Plaintiff made racist postings under the supervision of the SPLC; (d) that Plaintiff criminally solicited Defendant and others to attend and participate in what Plaintiff allegedly knew to be an SPLC entrapment scheme, in violation of W. Va. Code § 61-11-8a; (e) that Defendant was forced to scream at Plaintiff by telephone to stop him from pressuring Defendant's attendance; and (f) that the Proud Boys investigated and expelled Plaintiff as a malicious infiltrator acting on behalf of the SPLC. Each of these accusations is false.

52. Each of the foregoing statements was false at the time it was made and remains false.

53. Defendants published these statements to third parties via: (i) Defendant McInnes's X post of April 21, 2026 at 6:34 PM Eastern ([6]); (ii) Defendant McInnes's X post of April 21, 2026 at 8:07 PM Eastern ([7]); (iii) the Backlash Podcast of April 22, 2026, Episode 137, titled "SPLC INDICTED BY DOJ: With Gavin McInnes, Richard Spencer, Ken Silva & Casey Whalen," hosted by Defendant Reilly and published by both Defendants, with a runtime of 2:49:55 and defamatory statements beginning at approximately the 30:45 mark, viewed at least 3,200 times on Rumble; (iv) Defendant McInnes's appearance on the Compound Media YouTube channel on April 23, 2026 ([8], beginning at approximately the 15:45 mark), titled "They LIED! — Gavin McInnes and Anthony Cumia Go SCORCHED EARTH After STUNNING Indictment of SPLC," runtime 25:55, viewed at least 36,000 times with 1,600 likes; (v) Defendant McInnes's X repost of the Compound Media interview on April 24, 2026 ([9]); and (vi) on information and belief, The Gavin McInnes Show. All of these publications were accessible to viewers in West Virginia. Combined documented viewership across identified publications exceeds 636,000 (484,000 on the first X post; 102,400 on the second X post; 36,000 on the Compound Media YouTube episode; 13,500 on the April 24 X repost; and at least 3,200 on the Backlash Podcast).

54. Defendant's statements constitute defamation per se under West Virginia law for the following independent and cumulative reasons:

(a) Defendant accused Plaintiff of criminal conduct—specifically, of acting as a covert paid operative and informant of the SPLC, participating in a scheme in which the SPLC concealed illegal payments through fictitious shell entities including accounts in the names of "Center Investigative Agency (CIA)," "Fox Photography," and "Rare Books Warehouse"; of making racist postings under the

SPLC's supervision in violation of W. Va. Code § 61-6-21 and analogous statutes; and of criminally soliciting Defendant and others to attend and participate in what Plaintiff allegedly knew to be an SPLC-orchestrated entrapment operation, in violation of W. Va. Code § 61-11-8a and analogous statutes. Accusations of criminal conduct constitute defamation per se. *See* Mauck v. City of Martinsburg, 163 W. Va. 33 (1979).

(b)  Defendant's statements, by incorporating and amplifying the allegations of the DOJ indictment—including that the unnamed individual "made racist postings under the supervision of the SPLC"—impute to Plaintiff conduct that may constitute criminal offenses under W. Va. Code § 61-6-21 (ethnic intimidation) and related statutes. Imputing criminal conduct is defamation per se regardless of whether criminal charges have been filed.

(c)  Defendant's statements were clearly injurious to Plaintiff in his trade, business, and profession as an author, causing a decline in sales of Plaintiff's book since —notwithstanding simultaneous surging media coverage and public interest in the book's subject matter, demonstrating that the cause is reputational harm inflicted by Defendant's accusations rather than any lack of public interest.

55. Plaintiff's book sales have been modest within the past year because of technical barriers (no functioning Amazon account and non-operational website shopping cart). In or around early 2026, Plaintiff reactivated his Amazon account, which immediately began generating sales. In March 2026, Plaintiff sold 27 copies in-person at a rare conference appearance plus a small number through the newly operational Amazon channel. In April 2026 (pre-publication), he sold an additional 3 copies via Amazon. Following Defendants' defamatory statements beginning April 21, 2026, sales collapsed to 1 Amazon sale total, zero website sales, and zero in-person sales — despite (a) a documented surge in national media coverage of the SPLC indictment (the precise subject of Plaintiff's book), (b) spiking engagement on Plaintiff's book publisher's X account, and (c) measurably increased traffic to Plaintiff's website and book sales pages. This paradox — dramatically heightened public interest coupled with a near-total refusal to complete purchases — is the direct and proximate result of Defendants' false accusations that Plaintiff is a paid SPLC informant and crisis actor. Potential buyers who reach the point of considering a purchase encounter Defendants' statements and refuse to provide personal or payment information to someone they now perceive as dangerous.

56. Because Defendant made his statements with actual malice—knowing falsity or reckless disregard for the truth—Plaintiff is entitled to compensatory damages, including presumed damages available for defamation per se, and to punitive damages.

## V. COUNT II — FALSE LIGHT INVASION OF PRIVACY  (Against Both Defendants)

57. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 56 as if fully set forth herein.

58. West Virginia recognizes the tort of false light invasion of privacy, which provides a cause of action where a defendant has given publicity to a matter concerning another that places that person before the public in a false light, where: (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (b) the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. See Restatement (Second) of Torts § 652E; Crump v. Beckley Newspapers, Inc., 173 W. Va. 699 (1984).

59. Defendants gave widespread publicity to matters concerning Plaintiff by publishing false accusations across six identified publications reaching a combined documented audience exceeding 636,000 viewers: Defendant McInnes's two X posts of April 21, 2026; the Backlash Podcast of April 22, 2026, Episode 137 (at least 3,200 views on Rumble); the Compound Media YouTube episode of April 23, 2026 (at least 36,000 views); Defendant McInnes's X repost of April 24, 2026; and, on information and belief, The Gavin McInnes Show. These publications reached large audiences across multiple platforms and were designed to and did spread virally.

60. Defendant's publications placed Plaintiff before the public in the following false lights, each of which is highly offensive to a reasonable person: (a) as a covert paid operative and informant of the Southern Poverty Law Center who received hundreds of thousands of dollars in illegal wire transfers; (b) as a person who made racist postings online at the direction and under the supervision of the SPLC; (c) as a criminal who solicited others to participate in an SPLC-orchestrated entrapment scheme; (d) as a bad actor who was identified and rejected by the Proud Boys for malicious infiltration; and (e) as a person so untrustworthy and dangerous that members of the public cannot safely conduct commercial transactions with him or provide him with personal or payment information.

61. Each of these characterizations is false. No reasonable person would wish to be publicly identified as a paid government informant, a covert SPLC agent, or a criminal solicitor who staged a violent public event as a false flag operation. The false light in which Defendant placed Plaintiff is among the most damaging possible to a person's reputation, commercial relationships, and physical safety.

62. Defendant acted with knowledge of the falsity of his statements or with reckless disregard as to their falsity, as demonstrated by: his own admission that his accusation was based on "vibes" rather than evidence; his private communications expressing doubt about his own accusations; and his publication of statements about telephone calls and Proud Boys membership that are verifiably false and were known or should have been known by Defendant to be false at the time of publication.

63. As a direct and proximate result of Defendant's false light publications, Plaintiff has suffered all of the damages described in paragraph 46 above, including a decline in his book sales, severe reputational injury, impaired ability to conduct lawful commerce, and emotional distress. Plaintiff is entitled to compensatory and punitive damages on this count independently of and in addition to his defamation claim.

## VI. COUNT III — CIVIL CONSPIRACY  (Against Both Defendants)

64. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 64 as if fully set forth herein.

65. West Virginia recognizes civil conspiracy as a theory of joint liability arising from an underlying tort where two or more persons combine to accomplish an unlawful purpose, or combine to accomplish a lawful purpose by unlawful means, resulting in damages to the plaintiff. *See* Dixon v. Am. Indus. Leasing Co., 162 W. Va. 832 (1979). The unlawful means here are the commission of defamation per se and false light invasion of privacy, which are independently actionable torts under West Virginia law.

66. Defendants McInnes and Reilly combined and acted in concert to accomplish the unlawful purpose of defaming Plaintiff and placing him in a false light before the public. The combination is evidenced by the following: (a) Defendant Reilly invited and hosted Defendant McInnes on the Backlash Podcast specifically in the context of the DOJ's SPLC indictment, providing McInnes with a platform and audience for his accusations against Plaintiff; (b) Defendant Reilly, as host, controlled the program, directed the interview, and chose to broadcast and distribute the episode without objection to, correction of, or dissociation from McInnes's false accusations, despite hearing McInnes admit in real time that the accusation was based on no evidence — only "vibes" — and was therefore groundless; (c) Defendant Reilly was directly familiar with Plaintiff's open and publicly documented role as the rally's organizer and permit holder, making it more reckless, not less, to platform without caveat an accusation that Plaintiff was secretly a covert SPLC operative in that same context; (d) Defendant Reilly deliberately directed McInnes's accusations at an American Nationalist audience constituted to be hostile toward persons accused of being government informants, making his platform the ideal vehicle for maximizing harm to Plaintiff; (e) on information and belief, Defendant Reilly harbored a pre-existing personal hostility toward Plaintiff arising from a 2024 X direct message exchange in which Plaintiff contacted Reilly to request comment for his book, and Reilly responded with anger and insults, providing an independent personal motive for Reilly to welcome and amplify McInnes's accusations against Plaintiff rather than correct or distance himself from them; and (f) the combined effect of McInnes supplying the accusation and Reilly supplying the hostile platform, audience, and personal animus was greater than either could have achieved independently.

67. The object of the combination between Defendants was the unlawful publication of false and defamatory statements of fact about Plaintiff to audiences predisposed to act

on those statements harmfully — specifically, to audiences likely to regard Plaintiff as a dangerous SPLC informant deserving of professional destruction and personal harm.

68. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered all of the damages described herein, including the decline of his book sales, severe reputational injury, impaired ability to conduct lawful commerce, threats to his personal safety, and emotional distress. Defendants are jointly and severally liable to Plaintiff for all such damages on this count.

## VII. PUNITIVE DAMAGES

69. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

70. Defendant McInnes's conduct was willful, wanton, malicious, and undertaken with conscious disregard for the rights and safety of Plaintiff. Defendant McInnes expressly admitted his accusation was baseless while making it publicly on multiple occasions; orchestrated a deliberate multi-platform campaign spanning four days and at least six publications; on the Compound Media broadcast expressly acknowledged that persons falsely accused of being informants may be "innocent guys" who get destroyed, yet continued to name Plaintiff nonetheless; declined to retract his statements despite privately doubting their truth; and continued to allow his accusations to accumulate views and cause ongoing harm. This conduct warrants the imposition of punitive damages against Defendant McInnes on all counts. *See* Garnes v. Fleming Landfill, Inc., 186 W. Va. 656 (1991).

71. Defendant Reilly's conduct was similarly willful, wanton, and malicious. Reilly hosted and published McInnes's false accusations while having heard McInnes admit in real time that the accusation was based on no evidence whatsoever; he was directly familiar with Plaintiff's openly documented role as the rally's legitimate organizer, making it more reckless to platform the contrary accusation without caveat; and he deliberately directed those accusations at an American Nationalist audience he knew to be hostile toward persons accused of being informants, constituting conscious disregard for the harm to Plaintiff. Reilly's own documented participation in the Unite the Right planning Discord servers — while publicly platforming an accusation that Plaintiff was a covert SPLC operative in those same communications — adds a further dimension of bad faith: Reilly knew Plaintiff in his publicly acknowledged organizing role, yet amplified an accusation that secretly contradicted everything he had observed, without any evidentiary basis and to a maximally hostile audience. Most significantly for purposes of punitive damages, on information and belief, Defendant Reilly harbored a pre-existing personal grudge against Plaintiff arising from a 2024 X direct message exchange in which Plaintiff sought comment for his book and Reilly responded with anger and insults. This prior personal animus provides the most compelling evidence that Reilly's decision to host and broadcast McInnes's accusations was not inadvertent or negligent but deliberate and purposeful

— that Reilly saw in McInnes's accusations an opportunity to damage a person he already personally disliked, and consciously seized it. Conduct driven by personal animus, carried out through the deliberate dissemination of admitted speculation to a hostile audience, is precisely the conduct that punitive damages are designed to deter. This conduct warrants the imposition of punitive damages against Defendant Reilly on all counts on which he is liable. *See* Garnes v. Fleming Landfill, Inc., 186 W. Va. 656 (1991).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Kessler respectfully requests that this Court enter judgment in his favor and against Defendants Gavin McInnes and David J. Reilly, jointly and severally where applicable, on all counts, and award the following relief:

A. Compensatory damages against both Defendants on Count I (Defamation), Count II (False Light Invasion of Privacy), and Count III (Civil Conspiracy), jointly and severally as to the Backlash Podcast publication and severally as to each Defendant's independent publications, in an amount to be determined at trial, including presumed damages for defamation per se, damages for injury to reputation, lost book sales and ongoing income, impaired ability to conduct commerce, and emotional distress, in an amount that satisfies the jurisdictional minimum of this Court;

B. Punitive damages against each Defendant in an amount to be determined at trial, in light of each Defendant's willful, malicious, and knowing conduct;

C. Injunctive relief requiring Defendants to retract and remove all defamatory statements about Plaintiff from all platforms under their control, including Defendant McInnes's X account (@Gavin_McInnes), The Gavin McInnes Show, the Backlash Podcast episode, the Compound Media YouTube episode ([10]), Defendant McInnes's April 24, 2026 X repost ([11]), and any other media where such statements have been published;

D. Costs of this action; and

E. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

## VERIFICATION

I, Jason Kessler, being duly sworn, state that I am the Plaintiff in the above-captioned action; that I have read the foregoing Complaint; and that the factual allegations therein are true and correct to the best of my knowledge, information, and belief. Allegations made "on information and belief" are those which I believe to be true based on the information presently available to me.

_____
Jason Kessler, Plaintiff, Pro Se

Date: 4/27/26

STATE OF WEST VIRGINIA
COUNTY OF CABELL
The foregoing instrument was acknowledged
before me this 27 day of April, 2026
My commission expires _____
Notary Public/Deputy

Respectfully submitted,

_____
Jason Kessler
Pro Se Plaintiff
1365 5th Ave
Apt 13
Huntington, WV 25701
(571) 460-0412
jasonerickessler@gmail.com

STATE OF WEST VIRGINIA
COUNTY OF CABELL
The foregoing instrument was acknowledged
before me this 27 day of April, 2026
My commission expires _____
Notary Public/Deputy

Date: 4/27/26

FILED | 4/27/2026 9:50 AM
CC-06-2026-C-168
Cabell County Circuit Clerk
Michael J. Woelfel

## IN THE CIRCUIT COURT OF CABELL COUNTY
## STATE OF WEST VIRGINIA

**JASON KESSLER,**
　　　　Plaintiff,

v.　　　　　　　　　　　　　　Civil Action No.: _____

**GAVIN McINNES and**
**DAVID J. REILLY,**
　　　　Defendants.

## EXHIBITS TO COMPLAINT
### Kessler v. McInnes and Reilly

The following exhibits are submitted in support of Plaintiff's Complaint for Defamation and False Light Invasion of Privacy:

**Exhibit A** — Screenshot, Backlash Podcast Episode 137, "SPLC INDICTED BY DOJ" (Apr. 22, 2026, Rumble) — timestamp 30:51 / 2:49:55; defamatory statements begin at approximately 30:45.

**Exhibit B** — Screenshot, Compound Media YouTube Episode, "They LIED!" (Apr. 23, 2026) — timestamp 15:36 / 25:55; defamatory statements begin at approximately 15:45.

**Exhibit C** — @Gavin_McInnes X post, Apr. 21, 2026, 6:34 PM ET — 484,000 views; quote-tweet of @15poundstogo identifying Plaintiff as suspected SPLC field source.

**Exhibit D** — @Gavin_McInnes X post, Apr. 21, 2026, 8:07 PM ET — 102,400 views; 2017 Gavin McInnes Show clip accusing Plaintiff of suspicious Proud Boys recruitment.

**Exhibit E** — @Gavin_McInnes X repost, Apr. 24, 2026, 1:41 PM ET — 13,500 views; repost of Compound Media interview with caption: "The Ant Man is mad he wasn't offered any SPLC money. Me too! @AnthonyCumia."

_Jason Kessler_

Jason Kessler, Plaintiff, Pro Se

Date: __4/26/26__

## IN THE CIRCUIT COURT OF CABELL COUNTY
### STATE OF WEST VIRGINIA

**JASON KESSLER,**
     Plaintiff,

v.                                  Civil Action No.: _____

**GAVIN McINNES and**
**DAVID J. REILLY,**
     Defendants.

# EXHIBIT A

### SCREENSHOT — BACKLASH PODCAST EPISODE 137
### "SPLC INDICTED BY DOJ: WITH GAVIN McINNES, RICHARD SPENCER, KEN SILVA & CASEY WHALEN"

*Hosted and produced by Defendant David J. Reilly*
*Platform: Rumble | Published: April 22, 2026*
*Runtime: 2:49:55 | Screenshot timestamp: 30:51 | Defamatory statements begin: ~ 30:45*
*BacklashPodcast — 4,490 Rumble followers | Viewed at least 3,200 times*

**Rumble URL:** https://rumble.com/v78v83i-episode-136-splc-indicted-by-doj-what-this-means-for-north-idaho-and-pnw-wk.html



### Episode 137 — SPLC INDICTED BY DOJ: With Gavin McInnes, Richard Spencer, Ken Silva & Casey Whalen

 **BacklashPodcast** ✓
4.49K followers

*Figure 1: Backlash Podcast Ep. 137 at 30:51 / 2:49:55. Defendant McInnes (left, glasses/dark jacket); Defendant Reilly (right, red shirt). Donation notification "SecretHimmler sent $40" visible on screen.*

---

**Description and Identification of Exhibit A:**

True and accurate screenshot from Backlash Podcast Episode 137, "SPLC INDICTED BY DOJ: With Gavin McInnes, Richard Spencer, Ken Silva & Casey Whalen," broadcast on the Rumble platform by the BacklashPodcast channel hosted and produced by Defendant David J. Reilly. Published on or about April 22, 2026. The screenshot was captured at timestamp 30:51 / 2:49:55. Defamatory statements begin at approximately the 30:45 mark. The episode has been viewed at least 3,200 times on Rumble.

Defendant Gavin McInnes appears at left wearing glasses and a dark jacket. Defendant David J. Reilly appears at right in a red shirt. An on-screen donation notification reading "SecretHimmler sent $40" is visible, illustrating the nature of the program's audience. Lower-left text confirms "Gavin McInnes" as a participant; lower-center text identifies "Ken Silva" as a co-guest.

Plaintiff has preserved this screenshot and a recording of the relevant portion of the broadcast. The episode remains publicly accessible at the URL identified above.

Jason Kessler, Plaintiff, Pro Se

Date: 4/27/26

## IN THE CIRCUIT COURT OF CABELL COUNTY
### STATE OF WEST VIRGINIA

**JASON KESSLER,**
        Plaintiff,

*v.*                                    Civil Action No.: _____

**GAVIN McINNES and**
**DAVID J. REILLY,**
        Defendants.

## EXHIBIT B

### SCREENSHOT — COMPOUND MEDIA YOUTUBE EPISODE
### "THEY LIED!" — GAVIN McINNES AND ANTHONY CUMIA GO SCORCHED EARTH
### AFTER STUNNING INDICTMENT OF SPLC

*Compound Media YouTube Channel — 201,000 subscribers*
*Published: April 23, 2026 | Runtime: 25:55 | Screenshot timestamp: 15:36*
*Defamatory statements begin at approximately 15:45 | 36,000+ views | 1,600+ likes*

**YouTube URL:** https://www.youtube.com/watch?v=2zlQMTvU6j4



*Figure 2: Compound Media YouTube episode at 15:36 / 25:55. Anthony Cumia (left, aviator glasses); Defendant McInnes (right, Hawaiian shirt). Thumbnail graphic reads "SPLC EXPOSED." On-screen chart shows "$270K+ Unite the Right member" payment category.*

---

**Description and Identification of Exhibit B:**

True and accurate screenshot from the Compound Media YouTube channel episode titled "They LIED! — Gavin McInnes and Anthony Cumia Go SCORCHED EARTH After STUNNING Indictment of SPLC," published on or about April 23, 2026. The Compound Media YouTube channel has 201,000 subscribers. The episode has received at least 36,000 views and 1,600 likes. Screenshot captured at timestamp 15:36 / 25:55, immediately prior to the defamatory statements beginning at approximately 15:45.

Defendant Gavin McInnes appears at right in a Hawaiian-style shirt and glasses. Host Anthony Cumia appears at left in aviator-style glasses speaking into a microphone. The thumbnail displays "SPLC EXPOSED" in large text alongside a DOJ press conference image and a document headed "MORE THAN $3 MILLION IN FUNDS" with payment categories visible, including "$270K+ Unite the Right member" — the category referenced in the DOJ indictment and subject of Defendant McInnes's false accusations against Plaintiff.

Defendant McInnes reposted this episode to his X account on April 24, 2026 (Exhibit E), constituting a separate additional defamatory publication. Plaintiff has preserved this screenshot and a recording of the relevant portion of the broadcast. The episode remains publicly accessible at the URL identified above.

_(signature)_

Jason Kessler, Plaintiff, Pro Se

Date: 4/27/26

## IN THE CIRCUIT COURT OF CABELL COUNTY
## STATE OF WEST VIRGINIA

**JASON KESSLER,**
     Plaintiff,

v.

GAVIN McINNES and
DAVID J. REILLY,
     Defendants.

Civil Action No.: _____

# EXHIBIT C

## SCREENSHOT — X (FORMERLY TWITTER) POST
### @Gavin_McInnes | April 21, 2026 | 6:34 PM ET

_Quote-tweet of @15poundstogo | First defamatory publication_
_484,000 views — 151 comments — 1,200 retweets — 7,400 likes — 570 bookmarks_

**Post URL:** https://x.com/Gavin_McInnes/status/2046719367296041168
**Quoted post:** https://x.com/15poundstogo (Apr. 21, 2026)



**Gavin McInnes** ✓
@Gavin_McInnes

Follow

Holy CRAP! I remember Jason Kessler demanding me and Proud Boys come to Charlottesville and I kept refusing again and again. He wouldn't drop it. I remember screaming at him on the phone to fuck off and let it go.

🇺🇸FoiaFan ✓ @15poundstogo · Apr 21

This indictment against the Southern Poverty Law Center for funding white supremacists is amazing. They even funded one guy who helped arrange the infamous Charlottesville Unite the Right rally! Remember the "Very Fine People" Hoax!?! Link to full document below.

6:34 PM · Apr 21, 2026 · **484K** Views

151        1.2K        7.4K        570

*Figure 3: @Gavin_McInnes X post, Apr. 21, 2026 at 6:34 PM ET. Quote-tweet of @15poundstogo with McInnes's commentary naming Plaintiff. Embedded indictment text visible, including "field sources" language and F-37 Unite the Right entry.*

---

## Description and Identification of Exhibit C:

True and accurate screenshot of a post published by Defendant Gavin McInnes on his X account @Gavin_McInnes on April 21, 2026 at 6:34 PM Eastern Time. This is the first of Defendants' identified defamatory publications.

Defendant McInnes quote-tweeted a post by @15poundstogo stating: "This indictment against the Southern Poverty Law Center for funding white supremacists is amazing. They even funded one guy who helped arrange the infamous Charlottesville Unite the Right rally! Remember the 'Very Fine People' Hoax!? Link to full document below." Defendant

McInnes appended: "Holy CRAP! I remember Jason Kessler demanding me and Proud Boys come to Charlottesville and I kept refusing again and again. He wouldn't drop it. I remember screaming at him on the phone to fuck off and let it go."

The screenshot shows the embedded DOJ SPLC indictment text, including the "field sources" or "Fs" language and the F-37 entry describing a member of the "online leadership chat group" for the Unite the Right rally — the entry most plausibly associated with Plaintiff as the permit holder. By naming Plaintiff immediately after quoting a post about the SPLC's unnamed Unite the Right field source, Defendant McInnes communicated to his audience that Plaintiff was that unnamed individual. The post received 484,000 views, 151 comments, 1,200 retweets, 7,400 likes, and 570 bookmarks.

Plaintiff has preserved this screenshot and the full post. The post remains publicly accessible at the URL identified above.

_____

Jason Kessler, Plaintiff, Pro Se

Date: 4/27/26

<br>

## IN THE CIRCUIT COURT OF CABELL COUNTY
## STATE OF WEST VIRGINIA

---

**JASON KESSLER,**
      Plaintiff,

v.                                            Civil Action No.: _____

**GAVIN McINNES and**
**DAVID J. REILLY,**
      Defendants.

---

# EXHIBIT D

### SCREENSHOT — X (FORMERLY TWITTER) POST
### @Gavin_McInnes | April 21, 2026 | 8:07 PM ET

*2017 Gavin McInnes Show clip — Second defamatory publication*
*102,400 views — 53 comments — 256 retweets — 1,800 likes — 246 bookmarks*

**Post URL:** `https://x.com/Gavin_McInnes/status/2046742693586305102`
**Video clip:** The Gavin McInnes Show, c. August 2017 (embedded in post)

 **Gavin McInnes** ✓
@Gavin_McInnes

 Follow  Ø  ···

Me yelling at Charlottesville organizer Jason Kessler after "Unite the Right" and accusing him of trying to recruit Proud Boys. (This is in 2017 when "alt-Right" had come to mean full on NatSoc.)



8:07 PM · Apr 21, 2026 · **102.4K** Views

💬 53        🔁 256        ♡ 1.8K        🔖 246        ⬆️

*Figure 4: @Gavin_McInnes X post, Apr. 21, 2026 at 8:07 PM ET. Embedded video from The Gavin McInnes Show (logo visible upper-left). Lower-third chyron reads "Jason Kessler." Caption text visible: "I'm suspicious of you coming to Proud Boys meetings, saying…"*

---

**Description and Identification of Exhibit D:**

True and accurate screenshot of a post published by Defendant Gavin McInnes on his X account @Gavin_McInnes on April 21, 2026 at 8:07 PM Eastern Time — approximately ninety minutes after the first post (Exhibit C). This is the second of Defendants' identified defamatory publications.

Defendant McInnes shared a video clip from approximately August 2017 from The Gavin McInnes Show — confirmed by the program logo "THE GAVIN McINNES SHOW" visible in the upper-left of the embedded video — with the caption: "Me yelling at Charlottesville

organizer Jason Kessler after 'Unite the Right' and accusing him of trying to recruit Proud Boys. (This is in 2017 when 'alt-Right' had come to mean full on NatSoc.)" The screenshot shows Plaintiff's name on a lower-third chyron reading "Jason Kessler," and the visible caption text reads: "I'm suspicious of you coming to Proud Boys meetings, saying…" The full quote from the clip accuses Plaintiff of attending Proud Boys meetings while denying being alt-right, and suspects Plaintiff of attempting to recruit members.

Published ninety minutes after Exhibit C, this post was designed to retroactively frame Plaintiff's legitimate organizational activity as evidence of SPLC infiltration. The caption's reference to "alt-Right" having come to mean "full on NatSoc" was calculated to associate Plaintiff with extreme ideology, further imputing the racist conduct alleged in the indictment. The post received 102,400 views, 53 comments, 256 retweets, 1,800 likes, and 246 bookmarks.

Plaintiff has preserved this screenshot and the full post. The post remains publicly accessible at the URL identified above.

_____

Jason Kessler, Plaintiff, Pro Se

Date: _____4/27/26_____

IN THE CIRCUIT COURT OF CABELL COUNTY
STATE OF WEST VIRGINIA

_____

**JASON KESSLER,**
     Plaintiff,

v.                 Civil Action No.: _____

**GAVIN McINNES and
DAVID J. REILLY,**
     Defendants.

_____

# EXHIBIT E

## SCREENSHOT — X (FORMERLY TWITTER) REPOST
### @Gavin_McInnes | April 24, 2026 | 1:41 PM ET

*Repost of Compound Media interview — Fifth defamatory publication*
*13,500 views — 5 comments — 13 retweets — 103 likes — 5 bookmarks*

**Repost URL:** https://x.com/Gavin_McInnes/status/2047732710412562739
**Reposted content:** https://www.youtube.com/watch?v=2zlQMTvU6j4 (Compound Media, Apr. 23, 2026)



*Figure 5: @Gavin_McInnes X repost, Apr. 24, 2026 at 1:41 PM ET. Caption reads: "The Ant Man is mad he wasn't offered any SPLC money. Me too! @AnthonyCumia." Link card shows Compound Media thumbnail "SPLC EXPOSED"; engagement data: 1.5K likes, 364 comments.*

---

**Description and Identification of Exhibit E:**

True and accurate screenshot of a repost published by Defendant Gavin McInnes on his X account @Gavin_McInnes on April 24, 2026 at 1:41 PM Eastern Time — one day after the Compound Media broadcast (Exhibit B) and three days after his initial X posts (Exhibits C and D). This is the fifth of Defendants' identified defamatory publications.

Defendant McInnes republished the Compound Media YouTube episode to his X following with the caption: "The Ant Man is mad he wasn't offered any SPLC money. Me too! @AnthonyCumia." This caption reinforces the defamatory identification made in Exhibits C and D by framing the entire controversy around who "got" SPLC money — with the answer already supplied by the prior publications: Jason Kessler. The implicit communication is that McInnes and Cumia were excluded from SPLC payments that others (including Plaintiff, as identified in the prior posts) received.

The screenshot shows the link card for the Compound Media YouTube episode with the "SPLC EXPOSED" thumbnail. Engagement data visible in the link card shows 1.5K likes and 364 comments on the underlying video. The repost itself received 13,500 views, 5 comments, 13 retweets, 103 likes, and 5 bookmarks.

Plaintiff has preserved this screenshot and the full post. The post remains publicly accessible at the URL identified above.

_____

Jason Kessler, Plaintiff, Pro Se

Date: 4/27/26

**SUMMONS**

**Case Number:**

CC-06-2026-C-168

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA
**Jason Kessler v. Gavin McInnes**

Service Type:    Filer - Private Process Server

NOTICE TO:    Dave Reilly, 3710 N Carolwood Ct., Post Falls, ID 83854

Jason Kessler, 1365 5th Ave., Apt.13, Huntington, WV 25701

SERVICE:

4/27/2026 9:50:54 AM                    /s/ Michael J. Woelfel

_____Date_____                    _____Clerk_____

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____

☐  I certify that I personally delivered a copy of the Summons and Complaint t _____

☐  I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling or usual place of abode to _____, someone who is eighteen (18) years of age or above and resides there.

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____, an agent or attorney-in-fact authorized by appointment or statute to receive service of process for the individual.

☐  I have reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐  I have not reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐  Not Found in Bailiwick

_____Date_____                    _____Server's Signature_____

**CC-06-2026-C-168**
**Jason Kessler v. Gavin McInnes**

**SERVICE RETURN**