

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

---

**JASON KESSLER,**
        Plaintiff,

v.                                    Civil Action No.: 3:26-cv-00317

**GAVIN McINNES and**
**DAVID J. REILLY,**
        Defendants.

---

## PLAINTIFF'S MOTION TO STRIKE OR DENY
### STATEMENT OF VISITING ATTORNEY OF MARC J. RANDAZZA, ESQ.
### AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## I. INTRODUCTION

Plaintiff Jason Kessler, appearing pro se, respectfully moves this Court to strike or deny the Statement of Visiting Attorney filed by Marc J. Randazza, Esq., as visiting attorney for Defendant Gavin McInnes in this action. Although a formal motion is no longer required for visiting attorney admission under LR Civ P 83.6, this Court retains inherent authority to regulate the conduct of attorneys appearing before it and to deny or strike a Statement of Visiting Attorney where the visiting attorney's conduct or disciplinary history demonstrates unfitness to appear. See LR Civ P 83.7 (attorneys must conduct themselves in accordance with the West Virginia Rules of Professional Conduct and the ABA Model Rules of Professional Conduct); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (federal courts retain inherent authority to manage their own proceedings and supervise conduct of counsel).

This motion presents two independent categories of concern. First, Mr. Randazza's documented disciplinary history — including a conditional guilty plea to ethics violations before the Nevada Supreme Court, denial of pro hac vice admission by a Connecticut court on findings of "serious misconduct," reciprocal discipline in multiple jurisdictions, a federal court finding that his conduct toward a pro se litigant was "abusive and corrosive to the judicial process," and his own public declaration that his disciplinary record is "advertising" — raises serious questions about his fitness to appear before this Court. Second, Mr. Randazza's direct communications with Plaintiff in this case raise independent and current concerns under LR Civ P 83.7 and Model Rule 4.3. These include: his use of threatening language toward an unrepresented party followed by a dismissive "or what?" response when Plaintiff raised concern; his affirmative representation during a recorded telephone call that

the conversation was "privileged" and "can't be used to prove or disprove a figure plan" — followed by his use of Plaintiff's statements from that call as the sole basis for establishing the amount in controversy in the Notice of Removal (ECF No. 1); and a false statement of fact in that Rule 11 certified filing misrepresenting the date of the call. Each category independently warrants this Court's attention; together they present a pattern of conduct toward an unrepresented party that this Court's supervisory authority under LR Civ P 83.7 is designed to address.

The Visiting Attorney's Certification in LR Civ P 83.6 requires that Mr. Randazza certify he is "a member in good standing" of his bars and has "never been convicted of a felony." Plaintiff respectfully requests that this Court examine whether Mr. Randazza's appearance is consistent with LR Civ P 83.7's professional conduct requirements in light of the disciplinary record and current conduct set forth herein, and whether the "good standing" certification in his filed Statement of Visiting Attorney (ECF No. 5) accurately reflects his professional status.

## II. LEGAL STANDARD

Under LR Civ P 83.6, a visiting attorney is permitted to appear upon filing a Statement of Visiting Attorney and paying the required fee. No motion is required. However, this Court's authority to regulate attorney conduct does not end with the filing of the Statement. Under LR Civ P 83.7, "[i]n all appearances, actions and proceedings within the jurisdiction of this court, attorneys shall conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct promulgated and adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association." This Court has inherent authority to enforce those standards and to strike or deny a visiting attorney's ability to appear where that attorney's conduct or disciplinary record demonstrates non-compliance. See *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002).

The Fourth Circuit has recognized that federal district courts have broad inherent power to control the lawyers who practice before them. *In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990). Where an attorney's prior conduct in other forums raises concerns about fitness to appear, the court may take appropriate action to protect the integrity of its proceedings. The standard is not whether the attorney has been formally disbarred — it is whether permitting appearance is consistent with the court's obligation to maintain the integrity of proceedings before it.

Additionally, the Visiting Attorney's Certification requires Mr. Randazza to certify that he is "a member in good standing" of his bars. Plaintiff has now reviewed the filed Statement of Visiting Attorney (ECF No. 5, filed May 6, 2026). The LR Civ P 83.6 form does not require affirmative disclosure of disciplinary history beyond the "good standing" certification, and Plaintiff does not contend the form is facially incomplete. Rather, the "good standing" certification is itself legally contestable on the record presented herein. An attorney who received a stayed twelve-month suspension from the Nevada Supreme Court following a

conditional guilty plea to knowing ethics violations, triggered reciprocal discipline in Arizona, Massachusetts, and Florida, was denied visiting attorney admission by a Connecticut court on findings of "serious misconduct," and whose conduct toward a self-represented litigant a federal judge characterized as "abusive and corrosive to the judicial process" raises a legitimate question about whether "good standing" accurately describes his professional status. This Court has inherent authority to examine that question.

## III. MR. RANDAZZA'S PRIOR DISCIPLINARY HISTORY

### A. The Nevada Conditional Guilty Plea and Stayed Suspension

In October 2018, the Supreme Court of Nevada entered a disciplinary order against Mr. Randazza following his conditional guilty plea to two violations of the Nevada Rules of Professional Conduct: Rule 1.8 (Conflict of Interest) and Rule 5.6 (Restrictions on Right to Practice). *In re Discipline of Randazza*, Bar No. 12265 (Nev. Oct. 2018). The Nevada Supreme Court found that Mr. Randazza's misconduct was knowing and imposed a twelve-month suspension, stayed for eighteen months, subject to conditions. The admitted misconduct included soliciting a payoff from opposing counsel to "conflict himself out" of future litigation. In documented communications, Mr. Randazza wrote to opposing counsel: "There needs to be a little gravy for me. I'm gonna want at least used BMW money."

### B. Reciprocal Discipline in Multiple Jurisdictions

The Nevada discipline triggered reciprocal disciplinary proceedings in Arizona, Massachusetts, and Florida — each jurisdiction in which Mr. Randazza is licensed. These proceedings are matters of public record. Mr. Randazza is therefore subject to documented disciplinary findings in at least four jurisdictions.

### C. Denial of Visiting Attorney Admission in Connecticut

On July 7, 2020, a Connecticut Superior Court denied Mr. Randazza visiting attorney admission in the Sandy Hook litigation against Alex Jones, citing "serious misconduct" and finding that his sworn application misrepresented his disciplinary status. The court stated: "Permission to appear pro hac vice is a privilege, not a right." The court found that Mr. Randazza had stated in a sworn affidavit that he was "aware of no other grievances" while knowing of a pending disciplinary complaint in Arizona. Following the denial, his then-client Alex Jones stated publicly that he had no option but to "choose new counsel untainted by the claims of misconduct." This denial is confirmed as a matter of published appellate record. See *Lafferty v. Jones*, 225 Conn. App. 552, 560 n.6, 316 A.3d 742 (2024) ("Marc Randazza is an attorney admitted in Nevada whose application for pro hac vice [admission] in the Connecticut cases was denied by the court on July 7, 2020").

### D. Failure to Disclose in Other Jurisdictions

In the United States District Court for the District of Montana, the court was required to order Mr. Randazza to update his visiting attorney application with the Nevada discipline

after discovering he had failed to do so — a second documented instance of the same pattern of non-disclosure the Connecticut court identified.

### E. Federal Court Finding: Conduct Toward Pro Se Litigant "Abusive and Corrosive to the Judicial Process"

Most directly relevant to this case — in which Mr. Randazza seeks to appear against a pro se plaintiff — is a recent federal court ruling specifically addressing his conduct toward a self-represented litigant. In *Sternberg v. Warneck* et al, No. 2:23-cv-01466 (D. Nev.), before Chief Judge Andrew P. Gordon, Mr. Randazza represented the opposing party against Michael Sternberg, a self-represented U.S. Army and National Guard veteran. Judge Gordon reopened the case after finding that Mr. Randazza's conduct toward the pro se plaintiff was "abusive and corrosive to the judicial process." This finding — described by legal observers as "highly unusual, especially in a case involving a pro se litigant" — is directly pertinent here, where Plaintiff is himself a pro se litigant.

### F. Mr. Randazza's Own Characterization of His Disciplinary Record

When contacted by a journalist about his disciplinary history and Judge Gordon's order, Mr. Randazza responded publicly: "I've been divorced, brought up on bar charges, and had a bankruptcy... That list of shit you dumbfucks think hurts me is what I call 'advertising.'" This voluntary, public statement — that Mr. Randazza views his disciplinary record as a professional asset rather than a source of accountability — is directly relevant to whether the standard deterrence rationale of disciplinary enforcement applies to him. A visiting attorney who publicly declares his misconduct record is "advertising" has affirmatively represented that prior disciplinary proceedings have not deterred him from similar conduct. This Court should weigh that statement in evaluating whether permitting his appearance is consistent with the integrity of proceedings before it.

## IV. MR. RANDAZZA'S CONDUCT TOWARD PLAINTIFF IN THIS CASE RAISES INDEPENDENT CONCERNS UNDER LR CIV P 83.7 AND MODEL RULE 4.3

### A. The Communications

After entering this case as counsel for Defendant McInnes, Mr. Randazza contacted Plaintiff Jason Kessler directly by text message. The full exchange is attached as Exhibit A. Mr. Randazza's first message stated:

> *"Jason, sorry I didn't respond Saturday. It was Shabbat. At this point the offer we have for you is that you can drop the case and walk away without any counterclaim nor other consequences. Drop the claim and we let bygones be bygones. That's Gavin's offer. Please let us know your position."*

Plaintiff responded: "No deal" and "Thanks for the threat though."

Plaintiff then stated: "Given that your client has founded an organization which has been so repeatedly involved in acts of violence I would ask you to choose your language more carefully vis a vis threatening 'consequences.'"

Mr. Randazza replied: "or what?"

Plaintiff replied: "Unlike you, I do not issue threats. I asked you not to threaten me please. Is that small courtesy beyond you?"

The screenshots of this exchange, constituting Exhibit A, are reproduced below in chronological order:



*Figure A-1: Mr. Randazza's initial settlement offer text containing the phrase "nor other consequences."*



*Figure A-2: Continuation. Plaintiff requests clarification regarding "consequences" (blue); Mr. Randazza responds "or what?" (gray); Plaintiff replies asking for basic courtesy (blue).*

## B. Model Rule 4.3 — Dealing With Unrepresented Persons

LR Civ P 83.7 requires attorneys before this Court to comply with the ABA Model Rules of Professional Conduct. Model Rule 4.3 provides that when dealing with an unrepresented person, a lawyer shall not give legal advice to the person other than the advice to secure counsel, and must not state or imply that the lawyer is disinterested. More broadly, Rule 4.3 embodies the principle that lawyers must communicate fairly and clearly with unrepresented parties who lack professional training to evaluate legal communications.

Plaintiff is a pro se litigant — the paradigmatic unrepresented person Rule 4.3 protects. Mr. Randazza is a nationally prominent First Amendment litigator. After Plaintiff declined the settlement offer, Plaintiff made a measured and reasonable request: he asked Mr. Randazza to clarify the meaning of "other consequences," noting concern given the history of violence associated with his client's organization. This was a reasonable request from an unrepresented person seeking clarification of potentially threatening language. Mr. Randazza's response to that measured request was two words: "or what?" He then accused Plaintiff of being the threatening party, while maintaining throughout the coercive ambiguity that prompted Plaintiff's concern. This conduct — dismissive escalation in response to a pro se plaintiff's reasonable request for clarification — is inconsistent with the fair dealing

obligation of Rule 4.3 and is further evidence of the pattern a federal judge found "abusive and corrosive to the judicial process" in *Sternberg v. Warneck.*

### C. Mr. Randazza's April 29, 2026 Telephone Call With Plaintiff Constitutes Additional Rule 4.3 Misconduct and Produced a False Statement in a Rule 11 Certified Filing.

Mr. Randazza's conduct toward Plaintiff extends beyond the text message exchange. On April 29, 2026 — the same day Defendant McInnes was served — Mr. Randazza telephoned Plaintiff under the stated purpose of exploring amicable resolution. Plaintiff is a pro se litigant with no legal training. During the call, Plaintiff asked directly whether the conversation could be used against him in the legal proceedings. Mr. Randazza responded: "No. Our communications are privileged. They can't be used to prove or disprove a figure plan." This representation — that the communications were privileged and could not be used to prove a damages figure — was made to an unrepresented party to induce candid statements. Plaintiff subsequently raised his concern explicitly, stating: "I just don't want to be taken advantage of because I'm not an attorney. I'm a pro se litigant and I don't know if this is some kind of strategy to get me to say something you can use against me because I don't have knowledge." Mr. Randazza responded: "I guess I don't know what it is you're concerned about." Plaintiff has a full audio recording of this call, made lawfully pursuant to West Virginia's one-party consent statute, W. Va. Code § 62-1D-3(e). Nevada, where Mr. Randazza was located during the call, is also a one-party consent state.

Mr. Randazza then used Plaintiff's statements from that call as the sole basis for establishing the amount in controversy in the Notice of Removal (ECF No. 1, ¶¶ 6–8, 12) — doing precisely what Plaintiff had explicitly identified and feared. This conduct implicates Model Rule 4.3 independently of the text message exchange: a lawyer communicating with an unrepresented party may not make legal representations that serve the lawyer's own interests at the party's expense. Representing to an unrepresented party that a conversation is "privileged" and cannot be used to prove a damages figure — while planning to use it for exactly that purpose in a federal court filing — is a misrepresentation made in the lawyer's interest that deprived Plaintiff of the ability to protect himself. This is precisely the conduct LR Civ P 83.7 and Model Rule 4.3 exist to prevent, and it occurred in direct connection with proceedings now before this Court. The Notice of Removal additionally misrepresents the date of the call as April 28, 2026 when it was April 29, 2026 (ECF No. 1, ¶ 8) — a false statement of fact in a Rule 11 certified filing — further evidencing the pattern of inaccurate representations that characterizes Mr. Randazza's conduct in this action.

## V. ARGUMENT

### A. This Court Has Inherent Authority to Strike or Deny the Statement of Visiting Attorney.

The elimination of the formal pro hac vice motion requirement under LR Civ P 83.6 streamlines the administrative admission process but does not eliminate this Court's inherent authority to supervise attorney conduct. See *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). LR Civ P 83.7 expressly requires compliance with professional conduct rules as a

condition of all appearances in this Court. The LR Civ P 83.6 form itself does not require disclosure of disciplinary history beyond the "good standing" certification — but the absence of a disclosure requirement does not limit this Court's inherent authority. A visiting attorney may be admitted on the face of a form that asks limited questions while nonetheless being subject to this Court's supervisory authority to strike that admission where the attorney's conduct or fitness for appearance demonstrates non-compliance with LR Civ P 83.7's professional conduct obligations. See Chambers, 501 U.S. at 43.

## B. The "Good Standing" Certification Is Legally Contestable on the Documented Record.

The LR Civ P 83.6 Statement requires Mr. Randazza to certify that he is "a member in good standing of the Bar(s) listed in the Statement of Visiting Attorney." Plaintiff has reviewed the filed Statement (ECF No. 5). The LR Civ P 83.6 form does not require affirmative disclosure of disciplinary history beyond the "good standing" certification, and Plaintiff does not contend that the form is facially incomplete. Rather, the "good standing" certification is itself legally contestable given the documented record: Mr. Randazza received a stayed twelve-month suspension from the Nevada Supreme Court following a conditional guilty plea to knowing ethics violations; he was subject to reciprocal discipline in Arizona, Massachusetts, and Florida; and he was denied visiting attorney admission by a Connecticut court on a finding of "serious misconduct." Whether an attorney with this record is accurately described as a member "in good standing" is a question this Court has inherent authority to examine. Plaintiff respectfully requests that the Court direct Mr. Randazza to provide a written account of his full disciplinary history for the Court's review in connection with this motion, so that the Court may make a fully informed determination of whether his continued appearance is consistent with LR Civ P 83.7's professional conduct requirements.

## C. The Disciplinary Record and Current Conduct Together Warrant Denial.

Taken together, the record presented here demonstrates a pattern that this Court should consider before permitting Mr. Randazza to proceed: a conditional guilty plea to knowing ethics violations; reciprocal discipline in four jurisdictions; denial of admission by another court on findings of "serious misconduct" and misrepresentation; a federal court finding that his conduct toward a pro se litigant was "abusive and corrosive to the judicial process"; a public declaration that his misconduct record is "advertising" rather than a source of accountability; and communications with this case's pro se plaintiff that demonstrate the same aggressive and dismissive approach toward an unrepresented party that the Nevada court found troubling. Each element independently warrants this Court's attention; cumulatively, they present a record that is inconsistent with the professional conduct standards LR Civ P 83.7 requires.

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

(1)Strike or deny Marc J. Randazza's Statement of Visiting Attorney based on the disciplinary history and current conduct set forth herein;

(2)In the alternative, require Mr. Randazza to file a supplemental disclosure providing a complete and accurate account of his full disciplinary history, including the Connecticut denial of pro hac vice admission, all reciprocal disciplinary proceedings, and the *Sternberg v. Warneck* federal court finding, and to provide a written explanation of his communications with Plaintiff, before any ruling on whether to permit his appearance;

(3)Require Mr. Randazza to address whether: (a) his "or what?" response to Plaintiff's reasonable request for clarification of threatening language; and (b) his representation during the April 29, 2026 telephone call that the conversation was "privileged" and could not be used to prove a damages figure, followed by his use of Plaintiff's statements from that call in the Notice of Removal (ECF No. 1) — are each consistent with his obligations under Model Rule 4.3 as incorporated by LR Civ P 83.7; and

(4)Grant such other and further relief as this Court deems just and appropriate to protect the integrity of these proceedings.

Respectfully submitted,

s/ Jason Kessler

Jason Kessler
Pro Se Plaintiff
1356 5th Ave
Apt 13
Huntington, WV 25701
571-460-0412
jasonerickessler@gmail.com
Date: 5/7/26

**CERTIFICATE OF SERVICE**

I, Jason Kessler, hereby certify that on the date indicated below, I served a true and correct copy of the foregoing Motion upon the following:

Marc J. Randazza, Esq. / Randazza Legal Group, PLLC
ecf@randazza.com (served by electronic mail)

Daniel P. Taylor, Esq. / Taylor & Makricostas, PLLC
320 Penco Road, P.O. Box 2827, Weirton, WV 26062
dtaylor@taymaklaw.com (served by electronic mail)

David J. Reilly
3710 N Carolwood Ct, Post Falls, ID 83854
(served by U.S. mail)

s/ Jason Kessler
_____

Jason Kessler, Pro Se Plaintiff
Date: 5/8/26