UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

---------------------------------------------------------x

JASON KESSLER,                                    :
                                                  :    Civil Action No. 3:26-cv-00317
                             Plaintiff,           :
                                                  :
        -against-                                 :
                                                  :         **DEFENDANT MCINNES**
GAVIN MCINNES AND DAVID J.                        :    **OPPOSITION TO PLAINTIFF'S**
REILLY,                                           :       **MOTION FOR REMAND**
                                                  :
                             Defendants.          :
---------------------------------------------------------x

## 1.0    INTRODUCTION

Defendant Gavin McInnes (with the consent of Defendant David J. Reilly, unrepresented) opposes Plaintiff Jason Kessler's Motion to Remand. Remand is improper. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a), and removal was procedurally proper under 28 U.S.C. §§ 1441 and 1446. Complete diversity is undisputed: Plaintiff is a citizen of West Virginia, Defendant McInnes is a citizen of New York, and Defendant Reilly is a citizen of Idaho.

The only question before the Court is whether the amount in controversy exceeds $75,000. It does for two independent reasons: By Plaintiff's own admission, the actual financial amount in controversy is in excess of $75,000. It is worth noting that Plaintiff also seeks punitive damages, thus if as he said, anything less than $75,000 would be "an insult," then "an austere one-half multiplier"[1] would bring this figure to $112,500. However, even if the Plaintiff would disclaim seeking any money at all, the non-monetary relief he seeks is worth in excess of $75,000.

---

[1] *Coleman v. Wicker*, 2012 U.S. Dist. LEXIS 45225, at *10 (S.D. W. Va. Mar. 30, 2012).

### 1.1   The Financial Amount in Controversy

In an April 29[2] telephone call, Kessler made it clear that the amount in controversy was greater than $75,000. Ignoring the mudslinging in his motion, there is no doubt at all that he said that resolving this case for anything less than $75,000 "would be an insult."

Plaintiff attempts to shield that conversation from the Court's consideration by invoking Federal Rule of Evidence 408, but his position is internally contradictory. Plaintiff says in his Motion to Remand that he referenced $75,000 "not as a statement of the case's value" and that he was "not agreeing to" anything but merely "spit balling." Whatever that means, it seems that Mr. Kessler did not believe these were settlement discussions at all. However, even if the call is treated as a settlement discussion, Rule 408 does not bar consideration of settlement-related communications when offered for the purpose of assessing the amount in controversy. And even if all that did not apply, Mr. Kessler himself decided to file a transcript of the conversation, not only showing that he values the case in excess of $75,000, but that he hammered on that point quite hard, in fact more forcefully than Defendant's counsel recalled. ECF No. 17-2.

### 1.2   Non-Monetary Relief Exceeds the Amount in Controversy

Independently dispositive, Plaintiff's Complaint seeks injunctive relief that, standing alone, satisfies the amount-in-controversy requirement. In the Fourth Circuit the value of injunctive relief is measured by "the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). The relief Plaintiff seeks would compel speech, suppress published commentary across multiple commercial media platforms, and burden Defendants' First Amendment rights and their livelihoods as media personalities. The cost to each Defendant exceeds $75,000.

---

[2] Defense counsel mistakenly represented that this call took place on April 28. Plaintiff pointed out the error. The error was both inadvertent and immaterial.

Defendants have described the effects of Plaintiff's desired injunctive relief in signed declarations submitted to this Court. *See* **Exhibit 1**, Declaration of Gavin McInnes ("McInnes Decl.") and **Exhibit 2**, Declaration of David J. Reilly ("Reilly Decl."). Regarding the effects of Plaintiff's desired injunctive relief, Defendant McInnes stated, "my first amendment rights are worth more than $75,000 to me," and performing a court-ordered correction and retraction would cost him "in excess of $75,000 and would damage me far in excess of that amount both immediately and long term." (McInnes Decl. at 2).

For these reasons, set forth more fully below, the Court should deny Plaintiff's Motion to Remand and retain jurisdiction over this action.

## 2.0    ARGUMENT

The amount in controversy was first raised in the April 29 phone call, but is independently confirmed by the plaintiff's own motion to remand. ECF No. 12. In that motion, Mr. Kessler had every opportunity in this motion to simply state "I seek less than $75,000." However, he does not do that. He wants this case to resolve for more than $75,000, but wants this Court to simply not know that fact.

It is worth noting that in an attempt to resolve this motion, Kessler was offered the opportunity to simply disclaim an amount in controversy in excess of $75,000. He refused to do that. **Exhibit 3**, Declaration of Marc J. Randazza ("Randazza Decl.") at ¶ 22(b); **Exhibit 4**. Therefore, he not only confirmed the amount in his motion, but has refused a reasonable opportunity to cabin his damages to support remand, even when having the purpose of doing so spelled out for him in black and white. (Or blue and white, as it were).

### 2.1    Settlement Discussions are Admissible to Establish Amount in Controversy

Kessler moved for remand claiming that discussions about the April 29 phone call should not be admitted. ECF No. 12. But he then, himself, filed the recording of the call and what he

- 3 -

purports to be a transcript of the call. ECF No. 17-2. It was proper to introduce the contents of the call in the removal, but even if we hypothetically presume that it was not, Kessler waived any objection and cured the hypothetically improper introduction of the contents by filing a transcript (such as it is) of the conversation. *Id.* The Court may simply disregard the declaration about the call if it likes, and just rely on what Kessler himself filed – the transcript, in which Kessler states multiple times that he values the case in excess of $75,000. *Id.*

On that basis alone, the Court can dispense with most of Kessler's arguments, review his own filing, and clearly see that Kessler values this case as worth far more than $75,000. *Id.* at 4, 6. Given Kessler's filing of the transcript, the admissibility of the initial account of the April 29 phone call is an issue the Court may not need to wrestle with. But the Court should at least note that the initial introduction of the call's contents was proper.

Rule 408 is not a broad-sweeping confidentiality rule, as Mr. Kessler mistakenly argues. *See, e.g., Lohman v. Duryea Borough,* 574 F.3d 163, 167 (3d Cir. 2009) (Federal Rule of Evidence 408 permits use of settlement discussions in considering fee award decisions). This district is no stranger to the understanding that FRE 408's bar of use of settlement discussions to prove a claim or a defense is not also a bar to using settlement discussions to establish the amount in controversy. *See, e.g., Sayre v. Potts,* 32 F. Supp. 2d 881, 886-87 (S.D. W. Va. 1999) (considering settlement negotiation history in determining amount in controversy); *Scaralto v. Ferrell,* 826 F. Supp. 2d 960 (S.D. W. Va. Nov. 29, 2011) (settlement demand relevant evidence of amount in controversy); *Coleman,* 2012 U.S. Dist. LEXIS 45225, at *10 (S.D. W. Va. Mar. 30, 2012) (reviewing a settlement discussion to conclude that the amount in controversy was met). *See also Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002) at 840 n.3 ("We reject the argument that [Rule] 408 prohibits the use of settlement offers in determining the amount in controversy.").

Accordingly, whether the Court relies on the initial introduction of the April 29 call, or Kessler's later filing of the transcript, or both, the $75,000 threshold is shown.

### 2.2　The Amount in Controversy of the Case Exceeds the Required Amount for Removal Due to Plaintiff's Request for Injunctive Relief

Even if we excluded the conversation and the transcript, the injunctive relief sought is worth more than $75,000. "[I]t is well established that the amount in controversy is measured by the value of the object of the litigation." *Appalachian Power Co. v. Kyle,* No. CIV.A. 3:14-12051, 2015 WL 418145, at *2 (S.D.W. Va. Jan. 30, 2015) (quoting *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977) (internal quotation marks omitted)).

The Fourth Circuit has "adopted the either-viewpoint rule, concluding the value of injunctive relief is properly judged from the viewpoint of either party." *Id.* (citing *Government Emps Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964)) (stating "the amount in controversy is the pecuniary result to either party which that judgment would produce" and explicitly referencing its use of "[t]he test of 'value to either party'" (other citations omitted)). The Fourth Circuit further has explained that "the value of an injunction for amount in controversy purposes" is determined "by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id.* (citing *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002)). *See also McCoy v. Erie Ins. Co.,* 147 F. Supp. 2d 481, 492 (S.D. W. Va. 2001) (explaining the rationale and citing treatises for the policy reasons and holding that if the cost of compliance with an injunction would exceed $75,000, then the amount in controversy is met).

Here, Plaintiff is seeking injunctive relief in the form of "requiring Defendants to retract and remove all defamatory statements about Plaintiff from all platforms under their control." This injunctive relief is broad. It seeks both retraction (compelled speech) and removal (an action

adjacent to a prior restraint) across multiple media platforms. The Defendants' First Amendment rights are worth more than $75,000 as are the effects such injunctive relief would have on their businesses, as affirmed in their declarations to this Court. Exh. 1; Exh. 2. Thus, the injunctive relief Plaintiff seeks puts the amount in controversy for this case well above $75,000.

### 2.3    Kessler's Admissions and Conduct are Not a Mere Layperson's Unfamiliarity with the Rules or the Law

Kessler attempts to claim that Mr. Randazza took advantage of him by walking him into the admission that the case was worth in excess of $75,000. However, the transcript itself dissolves this argument. First and foremost, in that conversation, Kessler is the first to mention the $75,000 amount in controversy. Kessler states "[Y]ou're probably gonna try to argue that it's worth more than $75,000" ECF No. 17-2 at 6:9-10. He then describes $75,000 as "the base starting point", "a floor", states his claim is "worth substantially more than [$75,000]", and that "anything under [$75,000] is kind of an insult." (ECF No. 17-2 at 4, 6). He brings up $75,000 *sua sponte*. Kessler all on his own immediately turned the conversation to one of the jurisdictional requirements for federal court and in doing so, demonstrated complete knowledge of that issue.

Randazza was not surprised at Kessler's seeming knowledge of federal jurisdictional rules. Mr. Randazza was aware of Kessler's extensive legal knowledge prior to the call. Randazza Decl. at ¶¶ 5-15. Mr. Kessler has publicly stated "I am not an attorney, but I have spent many years in legal combat, including as a successful pro se litigant." **Exhibit 5**. Kessler has been a frequent flyer in courtrooms, and thus his base level knowledge was presumed. **Exhibit 6**.

Kessler claims that Mr. Randazza somehow misled him into believing that the conversation could not be used at all. However, that is not supported by Mr. Kessler's transcript. Only after he mentions the amount twice, does Mr. Kessler ask about how the conversation can be used. And

then, Mr. Randazza answered that it could not be used to prove a claim or a defense, but made it clear that it could be used in other contexts. ECF No. 17-2 at 8.

## 3.0    CONCLUSION

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a). Removal was timely and procedurally proper under 28 U.S.C. §§ 1441 and 1446. Plaintiff's own description of the April 29, 2026, telephone conversation removes it from the scope of Federal Rule of Evidence 408, and even if Rule 408 applied, that rule permits the Court to consider such communications for the purpose of assessing the amount in controversy. Independently, the injunctive relief Plaintiff seeks places the amount in controversy well above the $75,000 threshold. Either basis is sufficient to defeat remand.

Dated: May 15, 2026.

Respectfully Submitted,

_____
Daniel P. Taylor (WV#5821)
TAYLOR & MAKRICOSTAS P.L.L.C
320 Penco Road
Weirton, WV 26062
Tel: 304-723-9670
Email: dtaylor@taymaklaw.com

/s/ Marc J. Randazza
_____
Marc Randazza, (*Pro Hac Vice*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Ave.
Gloucester, MA 01930
Tel:    702-420-2001
Email:  mjr@randazza.com

*Attorneys for Defendant Gavin McInnes*

Civil Action No. 3:26-cv-00317

## PROOF OF SERVICE

I hereby certify that on the _____ day of _____, 2026, I electronically filed the foregoing Notice to the Court of Service Upon Plaintiff with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Parties of record. Additionally, the foregoing Notice was also sent to Plaintiff via USPS Regular Mail at the following address: 1365 5th Avenue, Apt. 13, Huntington, West Virginia 25701.

/S/DANIEL P. TAYLOR
DANIEL P. TAYLOR, ESQ. (WV#5821)
Taylor & Makricostas, PLLC
320 Penco Road
P.O. Box 2827
Weirton, West Virginia 26062
Telephone: 304-723-9670
Facsimile: 304-723-9674
E-mail: dtaylor@taymaklaw.com