# **Exhibit 3**

Declaration of Marc J. Randazza

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

---------------------------------------------------------------x

JASON KESSLER,                  :

                           :   Civil Action No. 3:26-cv-00317

              Plaintiff,     :

                           :

      -against-             :

                           :   **DECLARATION OF**

GAVIN MCINNES AND DAVID J.      :   **MARC J. RANDAZZA**
REILLY,

                           :

             Defendants.    :

--------------------------------------------------------------x

I, Marc J. Randazza, hereby declare as follows:

1)      I am an attorney seeking *pro hac vice* admission to practice in the United States District Court for the Southern District of West Virginia, and at all relevant times, I have been associated with Attorney Daniel Taylor as local counsel.

2)      On April 29, 2026, I had a phone call with Mr. Kessler.

3)      I acknowledge that I mistakenly had it noted as taking place April 28, 2026.  This was an inadvertent scrivener's error.  Mr. Kessler is correct as to the date.

4)      Before that call, I was familiar with Mr. Kessler from multiple directions.  I recalled having previous written exchanges with Mr. Kessler, mostly on Twitter (now X).  It was some time ago, but I recall him being upset with me because I stated that I did not believe in the government sponsoring racist monuments.  I recall him having a relatively sophisticated grasp of the legal issues surrounding the First Amendment.

5)      I also recalled having familiarity with Mr. Kessler when I worked on a tangential part of his *Sines v. Kessler* case in federal court in Virginia.  In that case, my firm represented a witness to the matter.  I never spoke with him, but I was under the impression that he organized the "Unite the Right" rally and had some involvement with lawsuits over the permits for the rally.

1

6)      I was also aware of the fact that Mr. Kessler is a prolific writer on legal topics, with

a level of knowledge that could certainly hold its own against some lawyers I have met.  I had seen

many of his articles, as they were written about cases I had involvement in or had interest in.

7)      Some examples of his analysis of legal issues are found at the following articles:

a.      Jason Kessler, *"Huge fail" By Plaintiffs In Lawfare Against Charlottesville Unite The Right Organizers?,* VDARE.COM (2021).[1]

b.      Jason Kessler, *J6 Footage Debunks Insurrection Hoax. Charlottesville Bodycam Footage Would Debunk UTR Hoax Too. Why The Wait?,* VDARE.COM (2023).[2]

c.      Charlottesville Survivor, *CHARLOTTESVILLE UNTOLD: Why Terry McAuliffe, Not Jason Kessler, Should Be On Trial,* VDARE.COM (2021).[3]

d.      Jason Kessler, *Charlottesville Defendant's Attorney Files Game-Changing Motion to Dismiss Tiki-Torch Charges,* VDARE.COM (2023).[4]

e.      Jason Kessler, *MORE CHARLOTTESVILLE NARRATIVE COLLAPSE: Prosecutors (As Well As Judges) Forced To Rescue In Unite The Right Tiki Torch Persecutions,* VDARE.COM (2024).[5]

f.      James Fulford, *Charlottesville Narrative Collapse Seen In Jason Kessler Lawsuit,* VDARE.COM (2020).[6]

---

[1] Available at https://vdare.com/articles/huge-fail-by-plaintiffs-in-lawfare-against-charlottesville-unite-the-right-organizers (last visited May 12, 2026).

[2] Available at https://vdare.com/articles/jason-kessler-j6-footage-debunks-insurrection-hoax-charlottesville-bodycam-footage-would-debunk-utr-hoax-too-why-the-wait (last visited May 12, 2026).

[3] Available at https://vdare.com/articles/charlottesville-untold-why-terry-mcauliffe-not-jason-kessler-should-be-on-trial (last visited May 12, 2026).

[4] Available at https://vdare.com/articles/charlottesville-defendant-s-attorney-files-game-changing-motion-to-dismiss-tiki-torch-charges (last visited May 12, 2026).

[5] Available at https://vdare.com/articles/more-charlottesville-narrative-collapse-prosecutors-as-well-as-judges-forced-to-recuse-in-unite-the-right-tiki-torch-persecutions (last visited May 12, 2026).

[6] Available at https://vdare.com/posts/charlottesville-narrative-collapse-seen-in-jason-kessler-lawsuit (last visited May 12, 2026).

8)      I am, and was, aware that Mr. Kessler is no stranger to litigation, having been involved in multiple lawsuits in Charlottesville, Virginia, including appellate cases, writing about legal topics, and all around he is well versed in how the court system works, and how to game it.

9)      I was also under the impression that he had been a *pro se* litigant in a prior case. Although I am uncertain of the details of that, and I have not done research to find that.  I could be mistaken, but such was my impression at the time of the call.

10)     I was also aware that Mr. Kessler had been previously charged with perjury and that he had evaded liability because the prosecutor could not establish that the crime had taken place in the county where he was charged.  *See Commonwealth v. Jason Eric Kessler*, Albemarle County Circuit Court Case No. CR-17000673-00.

11)     I was also aware that he has a criminal conviction record. This record includes Obstruction of Justice and Failure to Appear in Richmond in 2005, and Assault and Battery in May 2017, which was related to the perjury charge. However, I was not aware of the obstruction and failure to appear charges before our call.  I became aware of those when looking for the file number for the perjury and assault and battery charges to ensure that I was not operating from false memory.  *See* **Exhibit 6**.

12)     Before the call, I reviewed notes and information that I had about Kessler, and I made inquiries to third parties about Kessler to sharpen my memory about him and to ask people closer to him whether he could be reasoned with, and I was assured that he was intelligent and could likely be reasoned with.

13)     Based on that information, I believed that I was dealing with a highly sophisticated litigant who knew the system.

14) The call confirmed that belief, especially when Mr. Kessler immediately jumped to the case being worth in excess of $75,000 – or rather he said that the defense would likely argue that it was.

15) I could not imagine any other reason for him starting with that specific number.

16) I have seen Mr. Kessler's attempt at transcribing the conversation, and his transcription excerpts seem both incomplete and inaccurate, but it does generally convey the gist of what was said. And it is certainly accurate as to Mr. Kessler's multiple statements about the value of the case being in excess of $75,000.

17) The rampant mis-transcriptions of my comments may be the result of honest error. But I am unable to be 100% charitable when considering this. Mr. Kessler did previously attack someone, then lie about it in order to try and get the victim charged. This is related to the perjury charge, where he physically attacked Jay Taylor, then tried to get Taylor charged with assault and battery.

18) Subsequently, on May 11, 2026, Mr. Kessler submitted a purported transcript of our conversation. ECF No. 17-2.

19) I have reviewed this transcript, and it is my position that much of it is mis transcribed gibberish. Nevertheless, there are key points in it that I do recall – namely him stating on multiple occasions that the lowest amount he would value his case is $75,000. While his "transcript" is error laden, it does confirm this. *See* ECF No. 17-2 at 6:9-12[7] (calling $75,000 "a base starting point" for the case's "worth"); *id.* at 8:18-25 (calling $75,000 "the minimum" with "anything under [being] kind of an insult"); *id.* at 10:20-23 (again saying that $75,000 is "the minimum"); and *id*. at 13:18-23 (same).

---

[7] Pagination is based on ECF page, not internal pagination.

4

20)    To avoid any uncertainty, this is my recollection of how that call went, untainted by the two malformed "transcripts":

a.    I discussed that I thought that an intra-political fight among people of somewhat aligned views was a bad idea.  And I attempted to build rapport with him in that context.

b.    I asked Mr. Kessler what the case was worth to him. He stated  "you guys are going to say that it is at least $75,000", which is essentially the same as ECF No. 17-2 at 6:9-10.

c.    I understood that as Mr. Kessler being well aware of the amount in controversy requirement for federal court.  I thought that there could be no other explanation for him starting with that precise number, nor would there be any other explanation for him stating that the Defense would be asserting that amount.

d.    I evaluated that opinion in light of my perception of Mr. Kessler as a sophisticated and experienced operator in the legal system

e.    After some other banter, he insisted that less than $75,000 would "be an insult." Compare ECF No. 17-2 at 8:21

f.    As I tried to get a concrete list of what it was he wanted, I texted him at the same time with a running note of what I understood his position to be.

g.    I recall him *then later* asking if the call could be used against him.  I made reference to the operation of Federal Rule of Evidence 408 (although I am certain that I did not use the exact citation) that settlement discussions could not be used to prove nor disprove a claim or a defense.  I made no statement suggesting that the discussions could not be used for any other purpose.  The purported transcript is nonsensical where it reads that the settlement discussions "cannot be sued to prove or disprove a figure plan." ECF No. 17-2 at 10:1-2.

h.    He seemed concerned at that point that he might be bound to the terms, and I assured him that I did not take his position to be one that he could not change. But that his present position was all we were trying to establish.   His primary concern did not seem to be that he would be locked in to $75,000 with respect to jurisdiction, but that we would somehow hold him to his claim being valued at no *greater than* $75,000.

21)    On May 7, 2026, I received Mr. Kessler's motion for remand.  On May 7, 2026, I reached out to Jason Kessler by text to determine if he would stipulate to damages less than $75,000.  I presumed that if his position now was that he was indeed seeking less than $75,000 from Mr. McInnes, and he was well aware of the reason why I was asking, he would now have an

5

opportunity to repudiate the amount in controversy and resolve that issue.  In fact, I fully spelled that out to him.

22)     He refused to do so.

23)     Mr. Kessler refused to make any subsequent statement regarding whether the amount of damages being sought in this case would be above or below $75,000.  Nevertheless, he has not recanted his assertions that $75,000 was the "minimum" and that anything less would be an "insult."

24)     **Exhibit 4**, filed herewith, is a true and accurate copy of my messages with Mr. Kessler on the above matters.

I DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.

Dated: May 14, 2026.

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel:     978-801-1776
Email:  ecf@randazza.com